DANIEL B. ALLEY *versus* INHABITANTS OF EDGECOMB.

It is no part of the corporate duty of towns, as such, to provide for the public defence.

Military service is due from the citizen to the country in which he resides, in its time of need, and is not rendered for or in behalf of his town.

The adoption of town boundaries, as convenient limits of the sub-districts in raising the quota of the State, imposed no new duties upon the municipal corporations which were created for other special purposes.

Hence, if, in conformity with the regulations of the service, a town use the name and appropriate the service of one of its citizens already in the service, without his knowledge or consent, to fill its quota, it does not thereby raise an implied promise to pay for his service.

In December, 1863, the plaintiff enlisted in the navy, served three years and was honorably discharged. In August, 1864, the defendant town, at a meeting legally notified and under a proper article, " voted, that the town shall raise a sum of money sufficient to fill its quota under the call of the President in 1864, provided the men can be procured for $300 each from the town." In an action by the plaintiff to recover the $300 ; — *Held*, that the vote was prospective and did not apply to those who enlisted prior to the call.

Alley *v.* Inhabitants of Edgecomb.

ON FACTS AGREED.

For the facts, see the opinion.

*R. K. Sewall*, for the plaintiff.

The President demanded of the defendant town its proportion of 500,000 men. Defendants promised each man by its vote $300, and thereupon, without his consent, appropriated plaintiff's service upon its quota, and received credit therefor. The vote of the town was made valid by Act of Feb. 17, 1865. Plaintiff's patriotic zeal in enlisting before the passage of the vote of the town should not injure his claim. His service was his property and should not be taken for public use " without just compensation." Const. U. S., Art. 5. The act was tortious and the town liable in assumpsit. *Webster* v. *Drinkwater*, 5 Maine, 309 ; *Weston* v. *Davis*, 24 Maine, 347 ; *Warren* v. *Whitney*, 24 Maine, 475.

*Wales Hubbard*, for the defendants.

BARROWS, J. — By the agreed statement of facts, it appears that the plaintiff, an inhabitant of Edgecomb, and liable to be drafted into the military service of the United States, prior to the call for men issued by the President in July, 1864, volunteered in the navy. When that call was issued he was actually in the service, and, without his knowledge or consent, was credited upon the quota of the town to which he belonged. He served the full term of his enlistment, and was honorably discharged. He now claims to recover of the town a bounty of $300, by reason of his name being thus used to fill the quota of the town under that call, and upon the strength of the following votes.

At a town meeting, held June 2, 1864, upon an article in the warrant, — " to see what measures the town will take to procure men to fill the quota for said town agreeable to the anticipated call for men from the town of Edgecomb," — it was " *Voted*, to raise the money by subscription to procure the men to fill the abovementioned quota, authorizing the selectmen to procure the men as soon as practicable."

At a town meeting, held August 6, 1864, upon an article in the warrant, — "to see what measures the town will take to fill the quota of said town agreeable to the call of the President for five hundred thousand," — it was "*Voted*, that the town shall raise a sum of money in addition to the sum already subscribed sufficient to fill the town's quota under the last call of the President for five hundred thousand men in 1864, provided they can be procured for $300 per man from the town, and from the subscription."

The town has paid the $300 to each of the volunteers who enlisted and were mustered into the service under the call, but refuses to pay it to the plaintiff, although he was duly credited upon its quota.

And it is now to be determined whether upon this state of facts there are insuperable obstacles to the plaintiff's recovery in this action.

Throughout the protracted struggle for national existence from which we have just emerged, it was generally known and understood, and by none better than by the brave men who went forth to uphold the government against the traitors, that much of the action of towns in their corporate capacity in the way of raising men and money and paying bounties to volunteers and drafted men was, when initiated, without legal sanction. The want of legal authority and the probability of legislative ratification were constantly discussed in the town meetings.

Beyond question or controversy the right of towns to grant or to raise money depends upon authority derived from some statutory provision. Like other corporations they have no powers, that are not either expressly granted or necessarily implied from such as are granted, to enable them to discharge the special functions for which they were created and such duties as are by law imposed upon them. They have no inherent right of legislation like that of the State, but act only by a delegated power which must be measured by the terms of the grant. See remarks of DAG-GETT, J., in *Willard* v. *Killingworth*, 8 Conn., 254.

Now, whatever the praiseworthy and exalted sentiment of patriotism may dictate to the individual citizens, it is no part of the *corporate* duty of towns, *as such*, to provide for the public defence. This belongs to the State or Government, and by the constitution of the United States it is devolved upon the National Government, and whether efficiently performed or not, it does not follow that corporations of limited powers, like towns, can take upon themselves the duty and exact money of their citizens for the execution of it. *Stetson* v. *Kempton & al.*, 13 Mass., 271. Chief Justice PARKER, in pronouncing the opinion of the Court in the last named case, remarks as follows : — "To give additional wages, in order to encourage such as may be drafted, may evince the sense of danger and the patriotism of a town, but it does not fall within any duty imposed by law, and it is not certain that it would produce any valuable end. For instead of a uniform and equal payment of all those who in other respects are on a footing of equality, it would probably cause jealousies and dissensions which might be highly injurious to the public service. At any rate, such a tax can in no view be considered as laid for the discharge of necessary town charges."

And it is only under the head of "necessary town charges" that there could be any pretence that power was given by the general statutes defining the powers and duties of towns, to raise money for such a purpose.

Under the President's requisitions for men the quota to be furnished by the State was fixed. To distribute the burden equally throughout the State, it was apportioned among the several districts, and in further detail, for the sake of convenience, the districts were subdivided and a proportionate quota was assigned to each town. But this imposed no duty upon the town, *in its corporate capacity,* to furnish the men. It was because they were citizens of the United States that the plaintiff and others were liable to be called on to do military duty.

Their services were not rendered for or on account of the

*towns* in which they resided, but because that service was due from *themselves* to the country in which they lived in its time of need. The fact that town boundaries were adopted as convenient limits of the sub-districts in raising the quota of the State, imposed no new duties upon these municipal corporations, which were created for other special purposes.

This view of the case disposes of all that part of the argument of plaintiff's counsel which proceeds upon the idea that *the town* appropriated the services of the plaintiff, and is therefore bound to pay him such compensation as others have received for like services under the vote of the town. And it is upon such supposed implied obligation mainly that the counsel seeks to maintain the plaintiff's claim in argument. Much is said about the want of authority in the town to appropriate the plaintiff's name upon its quota, and the right of the plaintiff to just compensation *in the absence of any special contract*, and about constitutional objections to the appropriation of his property or services without compensation, and the like, all of which is without foundation. For the town had no quota which, *as a town*, it was under obligation to furnish. The plaintiff's services were not for the benefit and on account of *that corporation* against which he now seeks to recover, and the appropriation and crediting of his name to that sub-district was in conformity with law and the regulations of the service, and deprived the plaintiff of nothing to which he could rightfully assert a claim.

Towns can be made liable in cases of this description only by virtue of an express promise made by authority conferred upon them for that purpose by the legislative power of the State, or subsequently ratified and confirmed by an Act of the Legislature.

If we assume that the action of the town of Edgecomb was confirmed and legalized by § 1, c. 298, Laws of 1865, or that it was within the scope of § 6, c. 227, Laws of 1864, how does the plaintiff's case stand?

The vote of June 2, 1864, looks to an individual subscription as the means of filling the quota and binds the town to nobody. If the vote of Aug. 6, 1864, is to be so construed as to bind the town to make up the subscription to an amount equal to $300 per man to all who should be procured to enlist upon the strength of that vote, still the plaintiff having enlisted previous to the call would not be included in the terms of the promise, which contemplates a prospective procurement only.

To hold otherwise would be a perversion of the vote.

It is not for us to wrest the law even in favor of those to whom the community may owe a debt of gratitude.

*Plaintiff nonsuit.*

APPLETON, C. J., KENT, WALTON, DICKERSON and DANFORTH, JJ., concurred.