NEW YORK CENTRAL & HUDSON RIVER RAILROAD COMPANY
*vs.* BENJAMIN S. CLARKE.

Worcester.   October 1, 1917. — October 20, 1917.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & PIERCE, JJ.

*Covenant,* Running with the land.  *Railroad,* Duty to fence.  *Fence.  Pleading, Civil,* Declaration, Common counts.  *Practice, Civil,* Exceptions, Amendment.

A covenant in a deed to a railroad corporation that the grantor will and that his heirs, executors and administrators shall make and maintain at all times thereafter a good and sufficient fence or fences or wall or walls on the boundary lines between the grantor's own land and the granted premises, "which fences or walls shall be forever kept, maintained and made at my expense and the expense of my heirs, executors, administrators and assigns," is a covenant running with the land and binding on the grantor's successors in title.

Review by LORING, J., of the successive statutes in regard to division fences between railroad locations and the land of adjoining owners.

Under the provision of St. 1879, c. 205, § 2, as now embodied in St. 1906, c. 463, Part II, § 104, that, "If a person other than the railroad corporation is required by law or contract to erect or maintain fences along a part of the line of the railroad, the corporation shall erect such fences or keep them in repair as provided in the preceding section, and may recover the reasonable cost thereof in an action of contract from such person," an owner of adjoining land, who is bound by a covenant in a deed to make and maintain a division fence between his land and the location of the railroad, has the right at his election to build and maintain the division fence, and the right of the railroad corporation to build the fence at the reasonable expense of the landowner only arises when the landowner has elected not to perform the work himself.

Where the declaration in an action of contract contains only a count on an account annexed for work done and materials furnished, the plaintiff cannot recover for a breach of a covenant in a deed without amending his declaration by substituting or adding a count for breach of the covenant.

In an action of contract where the presiding judge ordered a verdict for the defendant, and the verdict was ordered rightly upon the pleadings, and it did not appear that the judge did not order the verdict for the defendant upon the pleadings, but it appeared that by amending its declaration the plaintiff would have a right to go to a jury, upon exceptions alleged by the plaintiff, it was *ordered* that the plaintiff should have leave to amend its declaration and that, if such an amendment should be filed in the Superior Court within a required time, the case should stand for trial; and that otherwise the exceptions should be overruled.

CONTRACT by the New York Central and Hudson River Railroad Company, a corporation, as the lessee of the Boston and

Albany Railroad Company, for $257.96 "for work, labor and material, as shown on the account hereto annexed, together with interest thereon, from the twelfth day of November, 1914, when the same became due and payable." Writ in the Central District Court of Worcester dated December 22, 1914.

On appeal to the Superior Court the case was tried before *White*, J. The material facts as shown by the evidence are stated in the opinion. The judge ruled that upon the whole evidence the plaintiff was not entitled to recover and ordered a verdict for the defendant. At the request of the parties the judge reported the case for determination by this court, with the stipulation that, if the ruling and the ordering of the verdict were right, then judgment was to be entered for the defendant on the verdict; but, if the case ought to have been submitted to the jury, then judgment was to be entered for the plaintiff in the sum of $220.

St. 1879, c. 205, § 2, in its present form as embodied in St. 1906, c. 463, Part II, § 104, is as follows: "If a person other than the railroad corporation is required by law or contract to erect or maintain fences along a part of the line of the railroad, the corporation shall erect such fences or keep them in repair as provided in the preceding section, and may recover the reasonable cost thereof in an action of contract from such person. If he is an owner of land adjoining such line, the corporation shall also have a lien upon said land for labor performed and furnished and all materials furnished and used by it in erecting and repairing such fences upon such land, and for the costs which may arise in enforcing it; and it shall be enforced in the manner provided for enforcing liens in chapter one hundred and ninety-seven of the Revised Laws."

*W. L. Parsons*, for the plaintiff.

*W. E. Sibley, C. H. Sibley & C. M. Blair*, for the defendant, submitted their case without argument or brief.

LORING, J. In 1834 the defendant's predecessor in title conveyed to the Boston and Worcester Railroad Corporation, the plaintiff's predecessor, the land covered by the railroad location now owned by the plaintiff. The location divided the farm then owned by the defendant's predecessor in title into two parts. By his deed the defendant's predecessor agreed that he would and his heirs, executors and administrators should make

and maintain at all times thereafter a good and sufficient fence or fences or wall or walls "on the boundary lines between my own lands aforesaid and the premises above granted, which fences or walls shall be forever kept, maintained and made at my expense and the expense of my heirs, executors, administrators and assigns." In September, 1914, the defendant purchased the farm bounded on one side by the railroad location in question. At that time he wrote to the plaintiff stating that he had bought the farm and notifying it that the fence "along this line is in such condition that no cattle can be turned on same" and asking to have the fence repaired. He added that he was aware that some seventy years ago his predecessor in title had agreed to keep the fences in repair but that he was advised that this agreement was no longer in effect. He also stated that he had been advised that he could look to the plaintiff "to repair these fences." On receipt of this letter the plaintiff wrote to the defendant stating that its understanding was that the defendant had succeeded to the obligations contained in the deed from the original owner of the farm to the plaintiff's predecessor in title and "that you are, therefore, liable to us for any expenses that we may be at in constructing and maintaining fences on this line." The plaintiff then stated that it had asked the chief engineer to have the fences put up and that it would look to the defendant for repayment of the cost. Thereupon the plaintiff erected a wire fence on the division line between the railroad location and the defendant's land that cost the plaintiff $257.96. Upon the defendant refusing to pay, this action was brought to recover that sum as the cost of erecting the division fence. So much was agreed upon by the plaintiff and the defendant and they went to trial on the "suitableness of the said fence" and the "reasonableness" of the cost. There was evidence that the cost was reasonable. At the conclusion of the evidence the judge directed the jury to find a verdict for the defendant and by request of the parties reported the case for the determination of this court with a stipulation that, if such ruling and direction were right, then judgment was to be entered for the defendant on the verdict, but if the case ought to have been submitted to the jury, then judgment was to be entered for the plaintiff, with damages assessed in the sum of $220.

1. The covenant entered into by the defendant's predecessor in

title ran with the land. *Bronson* v. *Coffin*, 108 Mass. 175. It follows that, apart from statutes which we are about to consider, it was the duty of the defendant to build the fence and, upon his failing to perform the covenant which had thus become his, the plaintiff could recover damages coming to it by reason of this breach of the covenant.

2. No argument was made by the defendant in this court. From the letter written by him in September, 1914, we assume it to be his contention that the duty of making and maintaining the division fence, which by the deed between the predecessors in title of both parties was put upon the grantor and so upon the defendant, has been transferred to the railroad by statutes of which St. 1906, c. 463, Part II, § 104, is a re-enactment.

Whether that be the true construction of those statutes is a question which requires a short review of the law as to division fences between a railroad location and the land of the adjoining owner. The law on this point was set forth at length in *Menut* v. *Boston & Maine Railroad*, 207 Mass. 12. But, for the purpose of determining the construction of the statutes in connection with the question now before us, it is necessary to restate the law from the point of view here involved. No statutory provision on the subject was enacted when railroads were first constructed in this Commonwealth. As a result the respective rights and duties of the railroad and the adjoining owner were those of adjoining owners at common law. At common law an owner had to keep his cattle from straying on to the land of his neighbor. The duty of fencing therefore rested upon the owner who wished in this way to keep his cattle at home. The consequence of this was that when land within the railroad location was taken by eminent domain the expense of erecting and maintaining a division fence was one of the elements of compensation to which the landowner was entitled. *Boston & Worcester Railroad* v. *Old Colony Railroad*, 12 Cush. 605. And, where the land within the railroad location was bought, it was presumed to include the cost of fencing by the grantor. *Stearns* v. *Old Colony & Fall River Railroad*, 1 Allen, 493, 494. *Menut* v. *Boston & Maine Railroad*, 207 Mass. 12, 16. This continued to be law on the subject until 1841. By St. 1841, c. 125, § 1, the county commissioners were required when assessing damages for land taken by a railroad to direct the railroad to construct

and maintain the division fence. Afterwards St. 1846, c. 271, § 3, directed that every railroad thereafter constructed should erect and maintain division fences. And this continued to be the law of the Commonwealth until St. 1879, c. 205, was enacted. Before stating the terms of that act we pause to point out the situation as to division fences which then existed. They were as follows: (1) In the case of all railroads constructed before 1841 the duty of maintaining the division fence was upon the landowner in the absence of an agreement upon the subject. (2) In case of railroads built after 1841 and before 1846 the situation was the same except in cases where the land within the railroad location had been taken by eminent domain and the damages had not been agreed upon. In that class of cases the county commissioners have been required to put the duty of building and maintaining the division fence upon the railroad. (3) In the case of all railroads built after 1846 the duty of building and maintaining the division fence was upon the railroad. When railroads were first constructed in this Commonwealth the question of division fences was treated as a question between the adjoining owners of land as we have already said. But there was another element involved in the matter and that was the peril to the public travelling upon the railroad for accidents caused by cattle straying upon the location. Doubtless that view of the matter led to the enactment of St. 1841, c. 125, and St. 1846, c. 271. The confusion of the rights of parties which we have stated above and the peril to the travelling public in case of the first and second classes of railroads (stated above) led to the resolve of 1877, c. 39, by which the railroad commissioners were instructed to consider "whether any further legislation is necessary for the protection of the public, in regard to fencing the railroads within the limits of this State." The railroad commissioners made a detailed report upon this subject which is to be found in their report for the year 1878, 133, *et seq.* In that report the history of the law and the confusion in the three classes of cases is set forth. In addition the commissioners considered at length the question of the vested rights of the parties in these three classes of cases and the best way to deal with them. No final recommendation on this point was made by the commissioners.

Thereafter St. 1879, c. 205, was enacted. By § 2 it is provided that whenever the duty of erecting or maintaining division

fences has been or is by law or contract imposed upon any person other than the railroad, the railroad shall thereupon erect such fences and keep the same in repair "and may recover the reasonable cost thereof in an action of contract from such person." That statute is now St. 1906, c. 463, Part II, § 104. When the duty of erecting and maintaining division fences had been by law or contract imposed upon the adjoining owner before St. 1879, c. 205, § 2, was enacted, it was the duty of the adjoining owner to do the work of erecting and maintaining the fence. Whether it would have been within the constitutional power of the Legislature to provide that thereafter the railroad should erect and maintain the fence and the landowner should pay the cost of the railroad's doing so we do not find it necessary to consider. To the farmer there is a difference between the burden of erecting and maintaining a fence and paying another person the cost of doing so. The difference found expression in a statute not now in effect which gave a taxpayer the right to work out his taxes by work upon the highways. Gen. Sts. c. 44, § 7. We do not find it necessary to determine whether the difference between the two is of such moment that the Legislature could have substituted one for the other. For we are of opinion that in view of the history of the matter the Legislature did not intend to interfere with the vested rights of the parties in this connection. Before the enactment of St. 1879, c. 205, § 2, the adjoining landowner had the right to erect and maintain the fence with his own material and by his own labor. And we are of opinion that by the true construction of that act he still had the right at his election to do so and that it is only on his election to let the railroad do the work at his expense that the railroad could do the work and collect the cost from him.

The plaintiff has contended that on the facts in evidence in the case at bar the jury were warranted in finding that the defendant had elected not to do the work himself but to let the railroad do it at his expense. We are of opinion that this contention cannot be upheld. In his letter to the plaintiff the defendant said that he had been advised that the contract made by his predecessor "has no longer any value" and that "I can look to you to repair these fences." To that the plaintiff answered that its understanding was that the defendant had succeeded to the obligations of his

predecessor in title and "that you are, therefore, liable to us for any expense that we may be at in constructing and maintaining fences on this line." It added that they would have the fence built and look to the defendant for payment. To this the defendant made no reply. Had the defendant on receipt of this letter from the plaintiff told the plaintiff to go ahead, he doubtless would have made his election and acquiesced in the plaintiff doing the work at his expense. See, in this connection, *Cheney* v. *Boston & Maine Railroad,* 227 Mass. 336. But he did nothing at all. The case therefore was at an impasse. The defendant insisted that the plaintiff was bound to build the fence at its own expense; the plaintiff insisted that it had a right to build it at the defendant's expense. And the parties left the matter at that point. In this state of the case no inference was warranted that the defendant had elected not to build the fence with his own material and at his own expense and had agreed that it should be built by the plaintiff at his expense.

If the plaintiff had declared upon the covenant made in 1834, which was binding on the defendant because it ran with the land, and sought to recover damages for breach of that covenant by the defendant, judgment now could be entered for the plaintiff in the sum of $220 under the stipulation that "if the case ought to have been submitted to the jury then judgment is to be entered for the plaintiff, with damages assessed in the sum of $220." But the only count in the plaintiff's declaration was a count for work done and material furnished, and under that count the plaintiff cannot recover damages for a breach of the covenant. The ground on which the presiding judge directed the jury to find a verdict for the defendant is not stated in the report. If the ordering of the verdict was made on the pleadings it was right and the ruling cannot be said to have been wrong. If based upon the pleadings it was right and it does not affirmatively appear that it was not based upon the pleadings. *Noyes* v. *Caldwell,* 216 Mass. 525. *Baxter* v. *Boston & Maine Railroad,* 217 Mass. 312, 314. The stipulation therefore that judgment might be entered for the plaintiff in the sum of $220 "if the case ought to have been submitted to the jury" does not apply.

We are of opinion that the plaintiff ought to have leave to amend by substituting or adding a count for breach of the covenant and

that that amendment ought to be allowed without costs to either party.   If such amendment is filed in the Superior Court within sixty days the case is to stand for trial; if not, the exceptions are overruled.

*So  ordered.*