THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES H. BELT, Plaintiff in Error.

*Opinion filed December 22, 1915—Rehearing denied Feb. 4, 1916.*

1. CRIMINAL LAW—*effect of the statute protecting depositors against embezzlement by insolvent bankers.* Paragraph 25a of the Criminal Code, (Hurd's Stat. 1913, chap. 38,) protecting bank depositors against embezzlement by insolvent bankers, abrogates, as between banker and depositor, the rule that a failure of a party to properly account for money received from another who has relied upon his honesty to return it, with interest, does not amount to embezzlement. (*Kribs* v. *People*, 82 Ill. 425, and *Rauguth* v. *People*, 186 id. 93, explained.)

2. SAME—*object of statute protecting depositors against embezzlement by insolvent bankers.* The object of paragraph 25a of the Criminal Code is to protect the public against fraudulent and dishonest bankers and those who would be bankers without the necessary capital.

3. SAME—*the statute regards substance and not form of transactions with insolvent bankers.* It is the nature of the business in which one is engaged and not the form in which the evidence of the transaction is clothed that fixes and determines criminal responsibility under the statute protecting depositors against embezzlement by insolvent bankers.

4. SAME—*meaning of the term "deposit."* The word "deposit," in its broad and comprehensive sense, as commonly used and understood in banking and commercial circles as well as by the public generally, includes all deposits made in a bank in the ordinary course of its business, whether they are in the form of general, special, time or demand deposits.

5. SAME—*legislature is presumed to have used words in their ordinary meaning.* The presumption is that the legislature has used words in their usual, ordinary and commonly understood and accepted meaning.

6. SAME—*it is incumbent on accused to show that certificate of deposit evidenced a loan.* On the trial of a banker for receiving a deposit at a time when he knew he was insolvent, if the accused claims that the certificate of deposit issued by the bank was to evidence a loan and not a deposit, it is incumbent upon him to prove that fact.

7. SAME—*burden on State to prove insolvency of banker.* In a prosecution of a banker, under the statute, for receiving a deposit when insolvent, the burden is upon the State to prove that the accused was insolvent and that he knew he was insolvent at the time he received the deposit, and any fact or circumstance tending to prove such facts is competent evidence against him.

8. SAME—*what competent evidence to prove insolvency of an accused banker.* In proving insolvency of a banker accused of accepting a deposit while insolvent the People are not confined to the books of the bank but may call each depositor and prove by him the amount of his own deposit, the time thereof and that it has not been re-paid; and the certificates of deposit are competent evidence to establish the liabilities of the accused.

9. SAME—*when fact of filing a petition in bankruptcy is competent to prove accused banker knew he was insolvent.* The fact of the filing of a petition in bankruptcy by a banker within six months after a deposit was made is competent evidence to prove that he knew he was insolvent when the deposit was made, provided it is shown that his liabilities and assets when he received the deposit in question were substantially the same as when he instituted bankruptcy proceedings.

10. SAME—*question of insolvency is one of fact for the jury.* The question of a banker's insolvency at the time he received a deposit is one of fact for the jury to determine from all the evidence in the case and under proper instructions from the court.

11. SAME—*what is proper instruction in prosecution of banker under the statute.* An instruction stating that no evidence of any specific intent to steal or embezzle a deposit is necessary, but "that

it is sufficient, to justify the jury in finding the defendant guilty, that they should believe from the evidence, beyond all reasonable doubt, that the defendant was a banker, and as such received the money of the prosecuting witness described in the indictment as a deposit when such witness was not indebted to the defendant and when the defendant was insolvent and knowing himself to be insolvent, whereby such deposit was lost to such prosecuting witness," is a proper one in a prosecution under paragraph 25a of the Criminal Code.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on writ of error to the Circuit Court of Macoupin county; the Hon. ROBERT B. SHIRLEY, Judge, presiding.

J. G. FRIEDMEYER, and PEEBLES & PEEBLES, for plaintiff in error.

P. J. LUCEY, Attorney General, JAMES H. MURPHY, State's Attorney, and D. E. DETRICH, (THOMAS RINAKER, and EDWARD C. KNOTTS, of counsel,) for the People.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Plaintiff in error was indicted by the grand jury of the circuit court of Macoupin county, at the September term, 1913, of that court, for the crime of embezzlement. The indictment contained eight counts, and charged plaintiff in error with corruptly, willfully, fraudulently and feloniously receiving a deposit through one Budd, as assistant cashier, while conducting a private bank at Bunker Hill, in said county, under the firm name of Belt Bros. & Co., at a time when he knew he was insolvent, by reason whereof the money so deposited was lost to the despositor. He was afterwards tried by a jury in that court and a verdict of guilty returned. Motions for a new trial and in arrest of judgment were overruled and judgment entered on the verdict. The court imposed a fine of $300 on plaintiff in error and sentenced him to the penitentiary for a period of two years. Plaintiff in error then sued out a writ of error from

this court. On motion of the People the cause was transferred to the Appellate Court for the Third District, where the judgment of the lower court was affirmed. A further writ of error was then sued out of this court to review the judgment of the Appellate Court, and the cause is now in this court pursuant to such writ of error.

It appears from the record that on the morning of June 13, 1913, one Theodore Keuthe deposited in the bank of plaintiff in error $150 in money, and received from him, through the assistant cashier, Budd, a certificate of deposit, which was as follows:

"No. 11491.                    BELT BROS. & Co., BANKERS.

*Bunker Hill, Ill., June 13, 1913.*

"Theodore Keuthe has deposited in this bank one hundred and fifty-two and twenty-five hundredths dollars (152.25), payable to the order of himself, due and payable six months after date in current funds, on the return of this certificate properly endorsed.

WILLIAM N. BUDD, *Asst. Cashier.*"

Not subject to check.

June 15, 1913, plaintiff in error closed his bank and delivered the keys to a committee of depositors of the bank, and thereafter, on June 20, 1913, united with them in filing a bill in the circuit court of Macoupin county for the appointment of a receiver for himself and his banking properties. A receiver was duly appointed and had charge of his affairs until in September following, when the plaintiff in error filed his voluntary petition in bankruptcy in the United States district court, upon which he was subsequently adjudged a bankrupt.

Plaintiff in error insists that the trial court erred in not holding, as a matter of law, that he was not guilty of the crime charged for the reason the transaction with Keuthe was a loan and not a deposit of the money in question, and that the court erred in refusing to give a peremptory instruction, at the close of the People's evidence, to find him not guilty, and cites *Kribs* v. *People,* 82 Ill. 425, and *Rauguth* v. *People,* 186 id. 93, which hold that the failure of a

party to properly account for money received from another who has relied upon his honesty to return the amount, with stipulated interest, does not render him liable to prosecution for embezzlement. The rule there announced is undoubtedly the law in this State where the relation of banker, broker or person engaged in a banking business and that of depositor is not established between the parties, and is the rule which would govern in this case were it not for the provisions of the act of June 4, 1879, passed for the protection of bank depositors, (Hurd's Stat. 1913, chap. 38, par. 25*a*,) under which plaintiff in error was indicted, which act provides as follows: "That if any banker or broker, or person or persons, doing a banking business, or any officer of any banking company, or incorporated bank, doing business in this State, shall receive from any person or persons, firm, company or corporation, or from any agent thereof, not indebted to said banker, broker, banking company, or incorporated bank, any money, check, draft, bill of exchange, stock, bonds, or other valuable thing which is transferable by delivery, when at the time of receiving such deposit, said banker, broker, banking company or incorporated bank is in his or its knowledge insolvent, whereby the deposit so made shall be lost to the depositor, said banker, broker or officer, so receiving such deposit, shall be deemed guilty of embezzlement, and upon conviction thereof, shall be fined in a sum double the amount of the sum so embezzled and fraudulently taken, and in addition thereto, may be imprisoned in the State penitentiary, not less than one nor more than three years."

By this statute the rule announced in the *Kribs* and *Rauguth cases, supra,* was entirely abrogated, in so far as bank officers and those engaged in the banking business are concerned, where the transaction, although in form a loan, constitutes a deposit as well as a loan, in the comprehensive sense in which the word "deposits" is used in the statute in question. The object of the statute, as its title indicates,

is to protect the public against fraudulent and dishonest bankers and those who would be bankers without the necessary capital. As said in *Meadowcroft* v. *People,* 163 Ill. 56: "A banker is a dealer in capital,—an intermediate party between the borrower and the lender,—who borrows of one party and lends to another; and the business of banking is, among other things, the establishing of a common fund for lending money. (Newmark on Bank Deposits, sec. 21.) And as said by the Supreme Court of Wisconsin in *Baker* v. *State,* 54 Wis. 368, a bank implies capital and capital invites confidence. A man holding himself out as a banker thereby gives public proclamation that he has money, and property readily convertible into money, in his possession and subject to his control, and for that reason he may be safely trusted, and his business not only affects himself as a banker, but every person who deals with him as such. The object of the statute that is here challenged was evidently to protect the public from being induced to deposit money with insolvent bankers, and there is manifest reason and necessity for protecting the community in their dealings with persons engaged in the banking business that do not exist in respect to their transactions with those employed in the ordinary agricultural, manufacturing, merchandising and mining pursuits." This object the legislature attempted to accomplish by making it a crime for any banker, broker or other person engaged in the banking business to receive deposits at a time when he knows he is insolvent, no matter what the form of the receipt issued as evidence of the fact of the making of such deposit. It is the nature of the business in which one is engaged and the character of the transaction, and not the form in which the evidence of the transaction is clothed, that fixes and determines criminal responsibility for the act under the provisions of the statute in question. To hold otherwise would be to give preference to form over substance and defeat the very object and purpose of the stat-

ute, and place it within the power of everyone criminally inclined to defraud the public at will, without fear of punishment, because of the form of the receipt issued for the money in the consummation of his dishonest and criminal act, no matter what the real character of the transaction may have been.

While it is true, as contended by the plaintiff in error, that, so far as the civil relations between the parties is concerned, the certificate issued to Keuthe is in form evidence of a loan, (*Bank of Peru* v. *Farnsworth,* 18 Ill. 563; *Laughlin* v. *Marshall,* 19 id. 390; *Hunt* v. *Divine,* 37 id. 137;) it does not necessarily follow that the form of the receipt issued as evidence of such deposit constituted the transaction a loan in such a sense as to distinguish it from a deposit, as contemplated by the legislature in enacting the provisions of the law in question. Deposits are of two kinds—general and special. (5 Cyc. 513; *Brahm* v. *Adkins,* 77 Ill. 263.) They are also commonly spoken of as "demand" and "time" deposits. By the former are meant those deposits payable upon demand and subject to check, and by the latter those which are for a fixed time and usually not subject to check. The prosecuting witness in this case deposited $150, which was to be returned to him in six months, with interest at the rate of three per cent per annum. There would have been no difference in the character of the transaction if he had taken a certificate for $150, payable in six months, with interest at the rate of three per cent per annum, instead of the certificate he did take. The word "deposit," in its broad and comprehensive sense, as commonly used and understood in banking and commercial circles as well as by the public generally, includes all deposits made in a bank, whether general or special, time or demand, and are so classified and designated by bankers and banking officials in making up a statement of a bank's assets and liabilities. The presumption is that the legislature has used words in their usual, ordinary and

commonly understood and accepted meaning, (*Culver* v. *Waters,* 248 Ill. 163,) and it is but fair to presume in this instance that the legislature used the term "deposits," in the statute in question, in its usual, ordinary, common and generally understood and accepted meaning, and intended to include, and did include within the meaning of that term, all deposits, of every kind and character, made in a bank in the usual and ordinary course of its business, whether in form of general, special, time or demand deposits. The certificate in question expressly states that Keuthe "has deposited in this bank $152.25." If the plaintiff in error had actually negotiated a loan from the prosecuting witness, Keuthe, and had issued the certificate of deposit in question as evidence of such loan, it would have been incumbent on him to prove that fact; but there is no evidence of such fact, and all the evidence in the record and circumstances attending the transaction clearly show the transaction was one of deposit and not of loan, as such transactions are made in the usual and ordinary course of banking business. The circuit court did not err in holding that the transaction in question was a deposit of money within the provisions of the statute in question and properly refused the peremptory instruction to acquit.

It is next insisted that the court admitted incompetent evidence, which prejudiced the rights of plaintiff in error with the jury. The evidence complained of was the testimony of other depositors that within eighteen months immediately preceding the closing of the bank they had deposited money, aggregating thousands of dollars, with the plaintiff in error which had not been re-paid to them, and that certificates of deposit had been issued to them evidencing the making of such deposits. The argument of plaintiff in error is that the effect of this testimony was to show plaintiff in error was guilty of other crimes and of swindling other depositors, to such an extent as to prejudice the minds of the jurors against him. If it be con-

ceded that the effect of this testimony was to show that he had committed other crimes of a like character with the one for which he was on trial, it does not necessarily follow from such fact that the evidence was not admissible against him for that reason. The burden of proof was upon the State to prove that the plaintiff in error was insolvent, and that he knew he was insolvent, at the time he received the money in question on deposit, and any fact or circumstance which tended to prove such fact was competent evidence against him on the trial. In order to show that plaintiff in error was insolvent, and that he knew he was insolvent, it was necessary to show the extent of his liabilities and assets and that his liabilities exceeded his assets. This fact could only be established by showing the amount of money deposited with plaintiff in error and unpaid at the time of the making of the deposit by Keuthe and the amount and extent of his assets at such time. While proof of these facts might have been made by the books of the bank, the admissions of plaintiff in error or other competent evidence, the People were not confined to such evidence in making such proof, but had a right to call each depositor and prove by him the fact of making his deposit, the time when made, the amount of such deposit and that the same had not been re-paid. The evidence offered and received was of this character, and we see no error in admitting it.

It is further insisted that the court erred in admitting in evidence the certificates of deposit issued by plaintiff in error to depositors and the claims in bankruptcy to which the certificates were attached, which had been filed with the referee in bankruptcy, and certain proceedings had in the probate court of Macoupin county against him by his sister in a matter concerning his father's estate. The principal complaint made against the admission of this evidence is that it afforded counsel for the People an opportunity, in arguing the case to the jury, to discuss these exhibits and re-

peatedly call the attention of the jury to plaintiff in error's action in closing his bank and filing a petition in bankruptcy within six months after the deposits were made as circumstances tending to establish the fact that plaintiff in error knew of his insolvency at the time he received the deposit in question. The certificates of deposit were competent evidence to establish the nature and extent of plaintiff in error's liabilities at the time the deposit was made and the bank closed. The evidence further shows that the condition of plaintiff in error's assets and liabilities was the same at the time he instituted the bankruptcy proceedings as it was on the day he closed his bank, and under these circumstances the fact that plaintiff in error voluntarily filed a petition to be adjudged a bankrupt, or otherwise recognized his insolvency, was competent evidence for the purpose of establishing the fact of his knowledge of such insolvency at the time he received the deposit in question.

It is further insisted that the plaintiff in error was not hopelessly insolvent, as found by the jury and the Appellate Court, at the time the deposit in question was made. The question of plaintiff in error's solvency or insolvency was one of fact for the jury on all the evidence in the case, under proper instructions from the court. According to the testimony of the receiver who was first appointed for the bank by the circuit court of Macoupin county and who was afterwards appointed trustee in bankruptcy, the assets of plaintiff in error were from $90,000 to $100,000 and the liabilities from $150,000 to $165,000, and this is nowhere disputed. At the instance of the defendant the court instructed the jury that in considering the value of the personal property belonging to the bank in determining the solvency or insolvency of the defendant, they should take into consideration the kind, nature and character of all items and property owned by said bank at the time it closed, together with the probable cash value of the same, and the value, if any, of such items and property for the purpose of

exchange in the usual and regular business transactions in said bank in the regular course of its business. The court further instructed the jury, at the instance of the defendant, that the value of the real property of the defendant as a banker to determine his solvency or insolvency is not a value to be determined by the jury upon a forced sale or hypothecation of said property, but is such value as the jury may determine, from all the evidence on that question, was the fair market value of such property in the condition it then was on the 13th day of June, 1913, taking into consideration the quality and location of the real estate, with the improvements thereon, and the condition of such improvements as there were on the 13th day of June, 1913, and the purpose for which said real estate and property, in the condition it then was, was adapted to be used. The jury were further instructed that if they believed, from the evidence, that the defendant was the owner of and was possessed of real and personal property valued as assets which exceeded the amount of all his liabilities as a banker, including his liability to the depositors of said bank on the 13th day of June, 1913, when said bank was closed, then, at law, the defendant was not insolvent within the meaning of the law. These instructions were as favorable to the defendant on the question of his solvency or insolvency as could have been asked. The question of the solvency or insolvency of the defendant and his knowledge of such fact was submitted to the jury by the court under proper instructions, and the jury by their verdict have found plaintiff in error guilty of the crime charged, and to do so must necessarily have found that he was insolvent at the time he received the deposit in question. From the examination of the evidence as contained in the record we are satisfied with the finding of the jury in this respect.

The second instruction given on behalf of the People is complained of. It informed the jury, in effect, that evidence of any specific intent on the part of the defendant

and receiver of the deposit to steal and embezzle the same is not required to be offered or made, "but that it is sufficient to justify the jury in finding the defendant guilty, that they should believe from the evidence, beyond all reasonable doubt, that the defendant was a banker, and as such received the money of the prosecuting witness described in the indictment as a deposit when such witness was not indebted to the defendant and when the defendant was insolvent and knowing himself to be insolvent, whereby such deposit was lost to such prosecuting witness." It is said that the portion of the instruction above set out is in conflict with the decisions of this court in the *Kribs* and *Rauguth cases,* but the decisions in those cases, as we have shown, do not apply to the case at bar, and we see no error in the instruction.

The instructions refused of which complaint is made were based largely upon the theory that the rule announced in the *Kribs* and *Rauguth cases* applied to the transaction in question and were therefore properly refused. Twenty-eight instructions were given on behalf of plaintiff in error and eleven on behalf of the People. Those given fully covered every material proposition of law in the case and were fully as favorable to plaintiff in error as was his right under the evidence. They contain substantially every material proposition of law found in the refused instructions proper to have been given under the evidence. We think, on the whole, that the jury were fully and fairly instructed as to the law of the case and that the record is free from reversible error in this respect.

Finding no reversible error in the record the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*