Annie G. Cronan *vs.* Commissioner of Banks & another.

John F. Cronan & another *vs.* Commissioner of Banks & another.

Suffolk.    December 2, 3, 1925. — January 12, 1926.

Present: Rugg, C.J., Braley, Crosby, Pierce, & Sanderson, JJ.

*Trust Company,* In liquidation, Fraud of officer in placing deposit in wrong department. *Contract,* What constitutes, Of depositor with trust company.

If a person goes to a trust company conducting a savings department and delivers to it money, stating to the officials of the company that it is to be deposited in the savings department, and the officials agree that it shall be so deposited and accept the deposit, the deposit becomes and remains a savings deposit although it never is placed in that department, and even if it is stolen by the officials of the company or otherwise misappropriated by them.

One, who was solicited to make a deposit in a savings department conducted by a trust company by an officer who made to him false representations of fact as to the solvency of the company, known to the officer to be false and not known to the depositor to be so, and who, by reason of such false representations, made the deposit, intending it to be placed in the savings department, is entitled, after the commissioner of banks has taken possession of the property and business of the trust company and is in the process of liquidating its affairs, to maintain a suit in equity to compel a classification of his deposit as in the savings department, although the officers of the company had placed it in the com-

mercial department and his arrangement with the trust company's officer had been oral and as a part thereof it was agreed that he should be paid interest at a fixed rate of five and three quarters per cent and that the deposit was to be and remain with the company at least six months, and a document entitled "Certificate of Deposit" and requiring thirty days' notice of intention to withdraw was issued to him upon the payment of the deposit.

TWO BILLS IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on May 15, 1922, and afterwards amended, seeking orders directing the commissioner of banks, in possession of the property and business of the Cosmopolitan Trust Company, to classify deposits made by the plaintiffs as deposits in the savings department.

The cases were consolidated and were referred to the same master.

The document issued to the plaintiff in the first suit was as follows:

CERTIFICATE OF DEPOSIT

"COSMOPOLITAN TRUST COMPANY 5–150.

$7,000                    BOSTON, MASS., Jul 13 1920.

There has been deposited with this Company the sum of SEVEN THOUSAND DOLLARS Dollars Payable to ANNIE G CRONAN or order, in current funds, upon surrender of this certificate.

Thirty Days Notice.              MAX MITCHELL,
No. 1547.                            President."

The document issued to the plaintiffs in the second suit was like that issued to the plaintiff in the first suit excepting for the change in the amounts and names of the depositors.

The master found that "by agreement with Mr. Mitchell, the rate of interest was to be five and three-fourths per cent, and the investment was to be and remain at least six months." Other material findings by the master are described in the opinion.

The defendants filed exceptions to the master's report. By order of *Braley,* J., the suits were reserved for determination by the full court on the pleadings, the master's report and exceptions thereto, and a stipulation and agreement as to facts.

*A. E. Pillsbury & G. M. Palmer,* for the plaintiffs.

*H. O. Cushman & D. L. Smith, (R. W. Nason* with them,) for the defendants.

CROSBY, J.   In these suits the plaintiffs ask to have certain deposits made by them declared to be deposits in the savings department of the Cosmopolitan Trust Company.

The cases are before us on a reservation by a single justice of this court upon the pleadings, the master's report and exceptions thereto, and a stipulation and agreement as to facts.   The evidence is not reported; and as the findings of fact made by the master are not mutually inconsistent or contradictory or plainly wrong, they are final.   *Glover* v. *Waltham Laundry Co.* 235 Mass. 330, 334.   *Goldband* v. *Commissioner of Banks,* 245 Mass. 143, 146.

The facts found or agreed by the parties are as follows: the plaintiff John F. Cronan, during the latter part of June, 1920, had a conversation with one Pinksohn, a vice-president of the trust company, who urged him to make a deposit in the commercial department of the company, which Cronan declined to do.   Soon thereafter Pinksohn met him again and stated that the company had opened a savings department, and described the advantages of deposits in the savings rather than in the commercial department; and also told him that the company had $17,000,000 on deposit.   Later, Cronan, who desired to make a permanent investment of money for himself and wife, decided that he would deposit it in the savings department, and on July 13, 1920, he went to see Pinksohn at the bank but found he was absent.   He saw, however, Max Mitchell, the president, who described the advantages of an investment in the savings department. Thereupon, on that day, Cronan made two deposits in the savings department, one for $7,000 in the name of his wife (the plaintiff Annie G. Cronan), and one for $50,000 in their joint names.   As evidence or security for such deposits two certificates were given him, copies of which are printed in the record.   By agreement with Mitchell, the interest on these deposits was to be five and three quarters per cent and the deposits were to remain at least six months.   The certificates recited that the deposits should not be withdrawn except on

"Thirty days notice." On August 2, 1920, alarmed by reports which Mr. Cronan had seen respecting the financial condition of the company, he and his wife gave notice of an intention to withdraw the deposits; but later, he was assured as to his investment by notices he saw of the purpose of the company to increase its capital, and open a branch office, and he did not therefore insist upon the notice of August 2. On September 25, 1920, the commissioner of banks took possession.

In addition to the foregoing and other facts found by the master, it is agreed by the parties that in June, 1920, the company planned a campaign to solicit new deposits; that about this time Mitchell told Pinksohn that the directors had voted to issue certificates of deposit bearing interest at five, five and a half, and five and three-quarters per cent per annum, and suggested that it would give him (Pinksohn) a chance to obtain new business. Pinksohn testified that at this interview Mitchell said "that the directors had a meeting the previous day and had voted to issue certificates of deposit for special savings accounts and they had in their vote designated different rates, and he thought it would be an incentive for me to get busy in a campaign to bring a lot of new deposits to the bank." Between June and September 1920, when the commissioner took possession, Pinksohn secured between $300,000 and $400,000 of new deposits, among them being the funds of the plaintiffs. Substantially all of this sum, including the $57,000 deposited by the petitioners, was secured upon Pinksohn's representations that such a deposit was "a savings deposit" or "special savings deposit." The plaintiffs were induced by this statement and by the further representations made by Pinksohn to them that the bank possessed good assets of $17,000,000 and that it was in a sound and prosperous condition, and by the representations of Mitchell, to make the deposits to the amount of $57,000. These representations were false, as the bank at that time was insolvent. Mitchell and Pinksohn both agreed with the plaintiffs that the money deposited by them would be put in the savings department; they knew that Mr. Cronan had been frequently solicited to make a deposit in the commercial

department and had each time refused; they also knew that both plaintiffs believed they were depositing in the savings department, and that without the agreement made by the officers of the company so to place their funds neither of them would have made any deposit in either department of the company. The plaintiffs did not know that their funds had not been placed in the savings department until the commissioner refused to permit them to prove their claims as savings department deposits, except so far as such knowledge may be imputed from the receipt of the so called "certificates of deposit." No previous knowledge of the condition of the company other than that imparted to the plaintiffs by Pinksohn and Mitchell, nor means of such knowledge, was possessed by either of them. The sole employment of Pinksohn by the bank as vice-president was to solicit outside the bank new deposits and accounts, and it was for this purpose his services were engaged. At the time of the solicitation for and the making of the deposits, the company had met losses from bad loans and investments, negligently, recklessly and carelessly made and with little or no regard to the banking laws of the Commonwealth, in excess of $5,000,000, and was insolvent. This condition was known to the officers. It is agreed that the claims of the plaintiffs, which were proved as commercial deposits, are not to prejudice either of them, as such action was taken at the direction of the commissioner of banks and against the protest of the plaintiffs at the time such proofs were made.

It is the contention of the defendants that the entire contract between the parties is evidenced by the instruments delivered to the plaintiffs after the deposits had been made; that such instruments properly construed are certificates of deposits as such certificates are usually understood and construed and are negotiable instruments; that they show the real contract between the parties and cannot be modified, varied or controlled by parol evidence to the contrary, with the result that the deposits are not to be treated as having been made as savings deposits, but are in fact and law deposits made in the commercial department. It is also argued by the defendants that "The plaintiffs' rights are further

affected by the fact that the money paid in by them was never in fact placed with savings funds, but was immediately used by the trust company in its general business." As to this last contention it is sufficient to say that if a person goes to a trust company having a savings department and delivers money, and states to the officials of the company that it is to be deposited in the savings department, and they agree that it shall be so deposited and accept the deposit, it becomes and remains a savings deposit whether it was ever placed in that department or not, or was stolen by the officials of the company or otherwise misappropriated by them.

The contention that the plaintiffs cannot prevail because they accepted the instruments delivered to them is untenable in view of the findings of the master and the agreed facts. The effect of the master's findings is that before these certificates were delivered, a completed oral contract for the deposit of the funds in the savings department had been made; and that the certificates were given as evidence or security therefor. These deposits having been solicited and received as savings deposits are savings deposits in fact and must be so treated, although by reason of some error, mistake or fraud they were not entered in the savings department. St. 1908, c. 520, §§ 1, 2; G. L. c. 172, §§ 60, 61. *Commissioner of Banks, petitioner, in re Prudential Trust Co.* 240 Mass. 478, 483. *Wasserman* v. *Cosmopolitan Trust Co.* 252 Mass. 253.

The contracts in question from their inception were contracts of deposit in the savings department even if not entered in the books of that department, and no act or omission of the company or its officers could prevent such classification. It is a reasonable inference from the findings of the master that the contracts between the parties were wholly oral. The certificates delivered to the plaintiffs were merely receipts or vouchers, given as evidence that the deposits had been made.

The plaintiffs in seeking a proper classification of their claim are entitled to relief in equity if it appears that by mistake or by fraud the certificates do not express the con-

tract made by them. The fact that they required thirty days' notice of withdrawal did not make the deposits invalid as savings deposits, as it is expressly provided by G. L. c. 172, § 66, that a trust company may require a depositor in a savings department to give notice not exceeding ninety days of his intention to withdraw the whole or any part of his deposit.

The findings by the master and the agreed facts plainly show that the plaintiffs were induced to make the deposits by reason of the gross fraud perpetrated upon them by Pinksohn and Mitchell, acting as officers of the company; that the company was hopelessly insolvent when by false representations of these officials the plaintiffs were induced to make the deposits; that Pinksohn and Mitchell knew the representations made to the plaintiffs were false, and that the plaintiffs had no knowledge of their falsity but believed them to be true. It follows that the plaintiffs are entitled in equity to the relief which they seek. The cases at bar cannot be distinguished in principle from the recent case of *Wasserman* v. *Cosmopolitan Trust Co., supra.*

The case of *Goldband* v. *Commissioner of Banks*, 245 Mass. 143, is plainly distinguishable in its facts from those in the present cases. There the plaintiffs did not rely upon fraud as the ground for relief. It is stated in the opinion in that case that "The several bills do not allege and the facts found by the master do not establish fraud on the part of the trust company in not giving to the plaintiffs contracts showing plainly deposits in the savings department." In other respects the facts in that case are different from those in the cases under consideration.

The exceptions to the master's report have not been argued by the defendants and we treat them as waived. Some of them are disposed of by what has been previously said; it is not necessary to refer to them in detail; it is manifest that none of them can be sustained. The appeals from the various interlocutory decrees and from the orders allowing amendments to the bills need not be considered, as they were waived by the defendants at the argument.

In each case an interlocutory decree is to be entered over

ruling the exceptions to the master's report and confirming the report; and a final decree is to be entered in each case directing the commissioner to classify the deposit as a deposit in the savings department.

*Ordered accordingly.*