THOMAS A. COOPER,

BANK COMMISSIONER OF THE STATE OF MAINE

*vs.*

FIDELITY TRUST COMPANY.

PETITION OF ROBERT BRAUN, CONSERVATOR

IN RE: CERTIFICATES OF DEPOSIT.

Cumberland. Opinion, September 7, 1935.

42

*Cook, Hutchinson, Pierce & Connell*, for Petitioner.
*Verrill, Hale, Booth & Ives*, for Portland Company and Chapman Electric Neutralizer Company.
*William B. Skelton*, for Portland Morris Plan Bank.
*Grover Welch*, for City of Westbrook.
*Francis W. Sullivan*, for John H. Simonds Co.
*Charles J. Nichols*, for Charles C. Bickford.
*Philip W. Buchanan*, for New York Trust Co. and General Electric Co.
*Harry L. Cram*,
*William B. Mahoney*, for Savings Depositors.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, HUDSON, JJ.

STURGIS, J. In this Petition in Equity, the Conservator of the Fidelity Trust Company of Portland, now in liquidation under Chapter 93 of the Public Laws of 1933, applies for instructions as to whether the holders of certain certificates of deposit issued by the Bank before it closed are entitled to share in the distribution of its assets on a parity with general creditors and depositors, or, as they make claim, may share equally with others entitled thereto in assets segregated as security for savings deposits. Notice to all holders of certificates of deposit and parties of record was ordered and proved. Special counsel for savings depositors were appointed. Upon hearing, the matter was reported to the Law Court.

Trust companies doing both a savings and commercial bank business in this State are required by Revised Statutes, Chap. 57, Secs. 89-91 to protect their savings deposits by segregating and holding assets of at least equal value as security for their payment. The essential provisions of the law read:

"Sec. 89. Every trust company soliciting or receiving savings deposits which may be withdrawn only on presentation of the passbook or other similar form of receipt which permits successive deposits or withdrawals to be entered thereon; or which at the option of the trust company may be withdrawn only at the expiration of a stated period after notice of intention to withdraw has been given; or in any other way which might lead the public to believe that such deposits are received or invested in the same manner as deposits in savings banks; or which advertises or holds itself out as maintaining a savings department, or uses the term 'savings' in connection with any part of its business, shall segregate and set apart, and at all times keep on hand so segregated and set apart, assets at least equal to the aggregate amount of such deposits, and in the case of any trust company which also acts as surety upon any bonds or other obligations the amount of its assets so segregated and set apart shall be at least fifteen per cent in excess of the aggregate amount of such deposits. The bank commissioner may require all such assets as appear to him to be carried in excess of their true value to be charged down to such value.

Sec. 90. Such assets so segregated and set apart shall be held in trust for the security and payment of such deposits, and shall not be mingled with the other assets of the company, or be liable for the debts or other obligations thereof until after such deposits shall have been paid in full. All other assets of the company, including the liability of the stockholders, shall be held equally and ratably for the payment of all claims, including any balance due such savings depositors after applying to their payment the assets so segregated and set apart."

The mandates of the statute are clear and explicit. It is the only authority a trust company has for segregating its assets for the benefit of any of its creditors. Its scope can not be enlarged nor its limitations abridged by any act or agreement of the officials of the bank or by the fiat of the banking department of the State. They

are bound by its provisions as is the conservator on liquidation under the "Emergency Banking Act."

The case reported shows that the Fidelity Trust Company, in carrying on its general banking business in Portland, maintained a savings department in which it accepted savings deposits and segregated assets as security therefor as required by the statute. It kept a separate book entitled "Record of Assets Segregated to secure Savings Deposits," in which in former years appeared the amount of typical savings deposits represented by savings pass books, followed by a descriptive list of the assets segregated. Beginning with December 5, 1927, being directed by the Bank Commissioner of the State to include as savings deposits all deposits evidenced by certificates of deposit and increase its segregation of assets accordingly, its Record was supplemented by each day adding to the total of savings deposits all outstanding time and demand certificates of deposit, but the total book value of segregated assets listed remaining at all times substantially in excess of the total of the savings deposits proper and the additions made thereto, although withdrawals, substitutions and additions were made, there was no change in the total amount of the segregation. On the general ledger of the Bank, with respect to such segregated assets, the notation was made "Segregated to secure Savings Deposits." This system was followed until some time in January, 1933, when, in accordance with further directions of the Bank Commissioner, demand certificates of deposit were dropped from the list of savings deposits, the segregation in fact and of record otherwise remaining the same and continuing so until the Bank ceased doing business. Holders of certificates who made inquiry were informed of the segregation made as security for their deposits, but no general notice was given to the public.

The holders of thirty-three certificates of deposit issued by the Fidelity Trust Company and outstanding when it closed have filed their proofs before the Special Master appointed in the liquidation proceedings and demand classification of their deposits as savings deposits. The certificates are all substantially similar in form. Some are payable on demand, some on certain notice, and others at a fixed future time. All bear interest, but at varying rates. The holders of all the certificates claim the benefit of the segregation of

assets originally made under the directions of the Bank Commissioner. The owners of typical savings deposits evidenced by pass books oppose these claims.

The certificates of deposit presented here are in the usual form issued by banks and are each framed as a written acknowledgment by the Fidelity Trust Company or one of its branches of the deposit of a sum of money payable to the depositor or his order. In their essential elements, they resemble negotiable promissory notes, and in general have that legal effect. 3 *Daniel on Negotiable Instruments* (7th ed.), Sec. 2019; 5 *Michie on Banks and Banking,* 598; 1 *Morse on Banks and Banking* (6th ed.), Sec. 51,297; 3 *Ruling Case Law,* 570; *Note,* 75 *Am. State Reports,* 43; 7 *Corpus Juris,* 647 and cases cited. See *Hatch* v. *National Bank,* 94 Me., 348, 47 A., 908. They each purport on their face, however, to represent a deposit in the bank by which they were issued and the verity of this recital is not refuted. So far as appears in the reported case, the transactions out of which they arose were deposits, as that term is known and accepted in the banking business and the law by which it is governed. The word "deposit," in its broad and comprehensive sense, includes deposits for which certificates, whether interest-bearing or not, are issued payable on demand or on certain notice or at a fixed future time. *Lamar* v. *Taylor,* 141 Ga., 227, 239, 80 S. E., 1085; *McCormick* v. *Hopkins,* 287 Ill., 66, 122 N. E., 151; *People* v. *Belt,* 271 Ill., 342, 348, 111 N. E., 93; *State* v. *Savings Bank,* 136 Iowa, 79, 113 N. W., 500; *State* v. *Cadwell,* 79 Iowa, 437, 44 N. W., 700; *Goldband* v. *Commissioner of Banks,* 245 Mass., 143, 139 N. E., 834; *Southern Surety Co.* v. *Ruark,* 97 Okla., 268, 223 P., 622; *Wilkes & Co.* v. *Arthur,* 91 S. C., 163, 74 S. E., 361; *State* v. *Shove,* 96 Wis., 1, 70 N. W., 312.

The nature of a deposit, however, is fixed by the contract of the depositor and the bank. The relation of banker and depositor is voluntarily assumed as a matter of contract. 5 *Michie on Banks and Banking,* 38. The contract need not be in any particular form, being governed like all other contracts by the mutual intention and understanding of the parties. *Fogg* v. *Tyler,* 109 Me., 109, 82 A., 1008. This rule applies to trust companies doing a banking business in this State. They are authorized to receive and accept deposits without limitation as to kind or amount. R. S., Chap. 57,

Sec. 61 et seq. Subject to statutory regulations which do not affect the questions raised here, they have the inherent power vested generally in banks to fix the terms and conditions upon which they will accept deposits and enter into agreements therefor with their depositors, and this power extends to both savings and commercial deposits. Although the right to issue certificates of deposit is not expressly granted nor are controlling regulations found in the statutes, it is well-settled law that banking corporations authorized to receive deposits and exercise the usual powers incidental to the business of banking, unless there is a constitutional or statutory restriction, may issue certificates of deposit payable either on demand or time. 5 *Michie on Banks and Banking*, Sec. 314; 1 *Morse on Banks and Banking* (6th ed.), Sec. 51; 3 *R. C. L.* 571. The power of banks to issue certificates of deposit for savings deposits under varying circumstances has been recognized in *State* v. *Savings Bank* (Iowa), supra; *Murray* v. *First Trust & Savings Bank*, 201 Iowa, 1325, 207 N. W., 781; *Goldband* v. *Commissioner of Banks*, supra; *Wasserman* v. *Cosmopolitan Trust Company*, 252 Mass., 253, 147 N. E., 742; *Cronan* v. *Commissioner of Banks*, 254 Mass., 444, 150 N. E., 193; *Barkas* v. *Commissioner of Banks*, 254 Mass., 451, 150 N. E., 178. There are no constitutional or statutory restrictions in this State upon the power of trust companies to issue certificates of deposit for either savings or commercial deposits.

The character of deposits for which certificates of deposit substantially similar to those involved here were issued, and the controlling effect of the contracts made by the parties, has been passed upon somewhat recently in Massachusetts. In *Andrews* v. *Commissioner of Banks,* and *Goldfine* v. *Same,* reported with and under the title of *Goldband* v. *Commissioner of Banks,* 245 Mass., 143, 139 N. E., 834, 836, the complainants offered moneys for deposit in the savings department of the Cosmopolitan Trust Company which was accepted as savings deposits and certificates of deposit in the usual form issued. In each case, an officer of the Trust Company represented to the depositor that his deposit was held as a savings deposit, when in fact it was not entered on the books of the savings department but carried in the commercial department and mingled with its funds. The Trust Company being in liquidation, the com-

plainants in equity prayed that their deposits be declared to be savings deposits. Neither accident, fraud or mistake was alleged or proven. The Court said:

> "The certificates of deposit issued to the plaintiffs Andrews and Goldfine as matter of law are not the usual evidence of deposit in the savings department. They are in form obligations commonly issued and recognized as incidents of commercial banking. They have for the most part the characteristics of promissory notes. The respects in which they differ do not aid these plaintiffs. . . . Some of the certificates here in issue are by express terms made payable on time. Those not so payable are by law payable on not less than thirty days' notice, G. L. c. 172, sec. 32, and some show on the face the interest to be paid. These elements, as matter of construction of written instruments, indicate deposits upon special terms and conditions agreed upon between the depositor and the trust company. . . . Money thus received must be treated as general deposits and not as deposits in the savings department."

Continuing, the Court finds controlling confirmation of its classification of certificates of deposit as evidence of commercial transactions in local statutes and holds as a matter of substantive law that the certificates can not be varied by parol evidence. The complainants were held to be bound by the terms of their certificates of deposit.

In *Wasserman* v. *Cosmopolitan Trust Company*, 252 Mass., 253, 147 N. E., 742, supra, the facts were substantially the same as in the Goldband case and the action was of the same nature, but fraud was alleged and found to be proved. On this ground, parol evidence of the contract of deposit actually made was admitted and, it appearing that it was for a savings deposit, it was held that the complainant was entitled to be treated as such in the liquidation proceedings.

In *Cronan* v. *Commissioner of Banks*, 254 Mass., 444, 150 N. E., 193, 195, other deposits in the Cosmopolitan Trust Company made and received as savings deposits and evidenced by certificates of deposit, but recorded and treated by the bank as commercial accounts, were under consideration. Here, as in *Wasserman* v. *Cos-*

48

*mopolitan Trust Company,* supra, fraud practiced upon the depositor was alleged and proved. In the course of this opinion, the Court said:

"It is the contention of the defendants that the entire contract between the parties is evidenced by the instruments delivered to the plaintiffs after the deposits had been made; that such instruments properly construed are certificates of deposit as such certificates are usually understood and construed and are negotiable instruments; that they show the real contract between the parties and can not be modified, varied or controlled by parol evidence to the contrary, with the result that the deposits are not to be treated as having been made as savings deposits, but are in fact and law deposits made in the commercial department. It is also argued by the defendants that 'The plaintiffs' rights are further affected by the fact that the money paid in by them was never in fact placed with savings funds, but was immediately used by the trust company in its general business.' As to this last contention it is sufficient to say that if a person goes to a trust company having a savings department and delivers money, and states to the official of the company that it is to be deposited in the savings department, and they agree that it shall be so deposited and accept the deposit, it becomes and remains a savings deposit whether it was ever placed in that department or not, or was stolen by the officials of the company or otherwise misappropriated by them.

The contention that the plaintiffs can not prevail because they accepted the instruments delivered to them is untenable in view of the findings of the master and the agreed facts. The effect of the master's findings is that before these certificates were delivered, a completed oral contract for the deposit of the funds in the savings department had been made and that the certificates were given as evidence or security therefor. These deposits having been solicited and received as savings deposits are savings deposits in fact and must be so treated, although by reason of some error, mistake or fraud they were not entered in the savings department. . . .

"The plaintiffs in seeking a proper classification of their claim are entitled to relief in equity if it appears that by mistake or by fraud the certificates do not express the contract made by them."

The Court then finds that this case is governed by the rules stated in *Wasserman* v. *Cosmopolitan Trust Company*, supra, and is distinguishable from *Goldband* v. *Commissioner of Banks*, supra. A final decree allowing the complainant to prove her claim as a savings depositor was ordered.

In *Barkas* v. *Commissioner of Banks*, 254 Mass., 451, 150 N. E., 178, upon closely analogous facts the same principles were applied.

We find no provisions in the statutes of this State which compel the conclusion that as a matter of law certificates of deposit in the usual form payable on time or on certain notice represent commercial transactions. In this respect, the statutes of Maine and Massachusetts are different. We concur, however, in the view that, nothing to the contrary appearing, such certificates of deposit, as well as those payable on demand, usually indicate on their face that the deposits for which they were issued were of that character. History places them in that category and common knowledge establishes the classification as the long-prevailing rule of banking. *Pierce* v. *State National Bank of Boston*, 215 Mass., 18, 101 N. E., 1060; 3 *Daniel on Negotiable Instruments* (7th ed.), 2043; 1 *Morse on Banks and Banking* (6th ed.), Sec. 297. The issuance of certificates of deposit for savings deposits seems to be of comparatively recent origin and the exception rather than the rule. We are of opinion that, when, as here, certificates of deposit recite the receipt of deposits without in any way defining their character, it must be presumed that the deposits which they represent were made and accepted as commercial deposits.

The certificate holders in the case at bar, with one exception, base their claims for classification as savings depositors in the Fidelity Trust Company on (1) the terms of their certificates, (2) the listing of their deposits as savings deposits by the officials of the trust company under orders from the Bank Commissioner, and (3) the statute, supra, regulating the segregation of assets as

security for savings deposits. One certificate holder introduced evidence into the Report tending to show that its deposits were made and accepted as savings deposits, but no evidence to this effect in behalf of the other holders was offered. No charge of fraud is made or supported in the reported case, and there is no prayer in any of the pleadings for reformation on the ground of mistake.

The certificates of deposit, on their face, refute the claim that the deposits which they represent are savings deposits. As already pointed out, the contracts of deposit as expressed in the certificates in which they were reduced to writing must be construed as contracts for commercial deposits. The terms of the certificates give no support to the claim of the holders that they should be classified as savings depositors.

Neither does the listing of the deposits as savings deposits by the officials of the trust company, of itself, give them that character. If the original contracts of deposit were for savings deposits, the listing added nothing to them. If, when made, the contracts were for commercial deposits, it required something more than the voluntary act of the trust company to convert them into contracts for savings deposits. It was undoubtedly competent for the parties by mutual consent to modify their original contracts of deposit after they were made. *Johnson* v. *Burnham*, 120 Me., 491, 115 A., 261 ; *Storrer* v. *Taber*, 83 Me., 387, 22 A., 256. But such modification must have been by mutual consent. The trust company could not enlarge or abrogate its contracts of deposit without the consent of the depositors with whom they were made. *Wasserman* v. *Cosmopolitan Trust Company*, supra ; 13 *Corpus Juris*, 591, and cases cited. Nor is power vested in the Bank Commissioner to override this salutary rule. His duty is to administer the law, not to make it or set it aside. His directions to that effect, reported here, were clearly outside his authority and void. They appear to have grown out of an excusable but erroneous interpretation of the law seemingly justified by precedent. They can not control the legal effect of valid contracts of deposit made by the trust company with its depositors.

The final contention of the certificate holders that the statute, R. S., Chap. 57, Secs. 89, 90, regulating the segregation of the assets of a trust company fixes the status of their deposits as sav-

ings deposits can not be sustained. Although the statute enumerates various kinds of savings deposits for which assets must be segregated, designating them according to the manner or means of their withdrawal, it makes additional general provisions seemingly broad enough to include all savings deposits in such institutions. This enumeration, with its general addenda, prescribes the kind of savings deposits which are entitled to the security of assets segregated under the Act, but can not be construed as a statutory declaration or determination of what are savings deposits. The statute does not expressly or by necessary implication abrogate the settled common law rule that the character of a deposit is determined by reference to the agreement of the bank and the depositor. If the deposit is in fact a savings deposit and by the terms of its withdrawal or otherwise is within the purview of the statute, it is entitled to the security there provided. If it can not qualify as a savings deposit in fact, it remains a general debt or obligation of the bank.

The claim of the Portland Morris Plan Bank, which is the one certificate holder who offered evidence as to the nature of its deposits, remains to be considered. This claimant contends that the report tends to show that at the time the deposits represented by its certificates were made it was mutually understood and agreed between its representatives and the officers of the Fidelity Trust Company that the deposits should be taken as savings deposits and have the security of segregated assets, and it was through accident or mistake that this part of the contracts of deposit was omitted from the certificates. This, if clearly established, is a reason for reforming the certificates, which as they stand bear a contrary import. *Johnson* v. *Burnham*, supra. But reformation must be sought in another proceeding where the issue can be fully presented and fairly met if contested. It is not here alleged or affirmatively pleaded. The established rules of chancery practice in this regard have not been abrogated in this jurisdiction.

We must, therefore, instruct the Conservator of the Fidelity Trust Company that the certificates of deposit referred to in his Petition do not, on their face, represent savings deposits in that institution and the holders have not here established their right to share in assets segregated against such deposits. Reasonable time

and opportunity, however, should be allowed the holders to correct their certificates if, through mistake, they do not represent the contracts of deposit actually made. This applies to all certificate holders. None can be equitably concluded by the pleadings in this proceeding or the report sent forward, both left incomplete through a common misconception of the law of the case. Those who by reformation of their certificates finally establish their right to be classed as savings depositors according to their contracts of deposit must be treated as such in the distribution of the assets of the Trust Company. All others must abide by the terms of their certificates.

*So ordered.*