CLARENCE L. MACDONALD
*vs.*
SAUL H. SHERIFF,
HELENA C. ROGERS
AND
ROLAND J. POULIN
AS THEY CONSTITUTE AND ARE THE
STATE LIQUOR COMMISSION

Penobscot.   Opinion, January, 1953.

*Pilot, Pilot & Collins,* for plaintiff.

*Alexander A. LaFleur, Attorney General,*
*Henry Heselton, Assistant Atty. General,* for defendants.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

NULTY, J. This case comes before us on appeal by the defendants from a final decree of the sitting justice granting a permanent injunction against the defendants as they constitute and are the State Liquor Commission in a bill in equity filed in Penobscot County Supreme Judicial Court.

From the bill in equity, the answer, the findings of facts by the sitting justice and the agreed stipulation, the following facts seem clear:

The complainant, on January 1, 1952, was duly issued by the State Liquor Commission a spirituous and a vinous liquor license and also a malt liquor license for the year 1952, which licenses, by their terms, permitted said complainant to legally carry on the sale of liquor in premises located in the town of Hermon in the County of Penobscot commonly known as Hotel "Turn-In." It also appears that the complainant asserted, and it is not seriously denied, that he lawfully conducted his business during the year 1952 in accordance with what is now known as Sec. 22-C, Chap. 57, R. S., 1944, said Sec. 22-C having been enacted by the Legislature by Sec. 102, Chap. 349, P. L., 1949, and former Secs. 36 and 53 of said Chap. 57, as amended by Chap. 97, P. L., 1947, were repealed by Secs. 103 and 105 of said Chap. 349, P. L., 1949, and as amended by Chap. 252, P. L., 1951, and in accordance with United States Eastern Standard Time. It is also stipulated and agreed that for the year 1952 the town of Hermon did not by vote adopt daylight saving time, so-called.

Chap. 1, Sec. 4, R. S., 1944, defines standard time as follows:

> "**Sec. 4. Standard time defined. R. S., c. 1, § 8, 1931, c. 273, § 1.** Within this state the standard time shall be that which is known and designated by the federal statute as 'United States Eastern Standard Time.'"

The United States Eastern Standard Time referred to above was established and enacted by an act of Congress which is known as the Act of March 19, 1918, Chap. 24, Secs. 1, 2 and 4, 15 U.S.C.A., Secs. 261, 262, 263, and said Act provided in substance that for the purpose of establishing standard time of the United States the continental United States was divided into five zones. It was provided that the standard time of the first zone shall be based upon the mean astronomical time of the seventy-fifth degree of longitude west from Greenwich; the bases of the other zones are similarly set forth and it was provided that the limitations of each zone were to be defined by an order of the Interstate Commerce Commission having regard for the convenience of commerce and for the junction and division points of Interstate Commerce. Sec. 263 provided that the standard time of the first zone, which included the State of Maine, would be known and designated as United States Eastern Standard Time.

So far as our research shows, United States Eastern Standard Time has been the legal time in use in the State of Maine, at least, since 1931, except that during the emergency created by what we call the second world war, that is, the war between the United States and Germany, Italy, Japan and other foreign countries, by Chap. 330, P. L., 1941, Sp. Sess. 1942, standard time in our State was advanced one hour. Under the provisions of the act, when the emergency ceased the act was terminated by proclamation of the Governor effective as of September 30, 1945. The only other

reference to daylight saving time or to a different time than United States Eastern Standard Time in our statutes which has been called to our attention appears in R. S., 1944, Chap. 57, now known as Sec. 22-C to which we will hereafter refer.

We, therefore, declare that except when changed or modified by the Legislature, United States Eastern Standard Time is the legal time for all legal business of the State of Maine and, whenever in our statutes time is referred to, unless it is otherwise specified, it means United States Eastern Standard Time as defined by R. S., 1944, Chap. 1, Sec. 4, above quoted. In short, the liquor licenses issued to and held by the complainant permit the operation of the business of selling liquor during the hours prescribed therein and those hours refer to United States Eastern Standard Time unless that time is changed or modified by the Legislature as above stated.

Sec. 22-C, Chap. 57, R. S., 1944, as amended, reads as follows:

"**Sec. 22-C. Sale on certain days and hours prohibited.** No liquor shall be sold in this state on Sundays or on the day of holding a general election or state-wide primary and no licensee by himself, clerk, servant or agent shall between the hours of midnight and 6 A. M. sell or deliver any liquors, except no liquors shall be sold or delivered on Saturdays after 11:45 P.M.; provided, however, that liquor may be sold on January 1st of any year from midnight to 2 A. M. unless January 1st falls on Sunday; *provided further, however, that the commission by rule and regulation may set hours for sale which will give effect to daylight saving time during times when the same is in effect.* No licensee shall permit the consumption of liquors on his premises on Sundays or after 15 minutes past the hours prohibited for sale thereof, except by bona fide guests in their rooms." (Emphasis ours.)

Sec. 6, Sub-Sec. VIII of Chap. 57, R. S., 1944, with respect to the power of the State Liquor Commission to establish rules and regulations reads as follows:

"VIII. (1935, c. 179, § 2) To establish regulations for clarifying, carrying out, enforcing, and preventing violation of all or any of the laws pertaining to liquor, which regulations shall have the force and effect of law unless and until set aside by some court of competent jurisdiction or revoked by the commission."

We might add for purposes of clarification that the emphasized portion of said Sec. 22-C hereinbefore quoted was enacted by said Chap. 97, P. L., 1947, and at that time affected Secs. 36 and 53 of Chap. 57. When Chap. 349, Sec. 102, P. L., 1949 was enacted as Sec. 22-C, Secs. 36 and 53 of said Chap. 57 were repealed. The State Liquor Commission, acting in pursuance of Chap. 57, Sec. 6, Sub-Sec. VIII, and after the adoption of the amendment enacted by said Chap. 97, P. L., 1947, which was the daylight saving proviso now contained in Chap. 57, Sec. 22-C, promulgated what is known as Rule 15 which reads as follows:

"**Rule 15. Daylight Saving Time.** If any municipality in which any licensee is conducting his business adopts Daylight Saving Time, so-called, the hours of opening, closing and carrying on any liquor business in such municipality shall be the hours prescribed in Chapter 57 of the Revised Statutes, except that instead of Eastern Standard Time they shall mean Daylight Saving Time during that part of the year that Daylight Saving Time is in effect in any such municipality. A municipality shall be deemed to have adopted Daylight Saving Time within the meaning of this regulation if the municipality so votes, *or if without such vote a majority of such business establishments therein are conducted on and in accordance with such time.*" (Emphasis ours.)

The State Liquor Commission, through its inspection agencies, notified the complainant that he was carrying on his liquor business contrary to the Statutes and the Rules prescribed thereunder by the State Liquor Commission because the State Liquor Commission had determined that a majority of such business establishments in the town of Hermon were being conducted on daylight saving time and that unless complainant changed his hours to accord with what the State Liquor Commission had determined was the time generally used in the town of Hermon, which was claimed to be daylight saving time under Rule 15, it would be necessary to call the complainant before the Commission to consider the suspension or revocation of the licenses held by complainant. The State Liquor Commission based its claims that complainant was violating the laws on what we have referred to herein as Sec. 22-C of Chap. 57, R. S., 1944, and Rule 15 promulgated by the Commission under Sec. 6, Sub-Sec. VIII of Chap. 57, R. S., 1944, maintaining that it was the intention of the Legislature to grant the State Liquor Commission the right to make necessary rules and regulations relating to the operation and control of licensed premises with respect to daylight saving time, so-called.

We have noted that there is no state statute in effect which provides for state-wide daylight saving time, so-called, but we do know as a matter of common knowledge that certain municipalities have voted to conduct their private municipal and business affairs from the last of April to the last of September on daylight saving time, so-called, which is time one hour in advance of United States Eastern Standard Time.

The Commission claims that under said Sec. 22-C, Chap. 57 and Commission Rule and Regulation 15, it has the right to regulate the hours that the complainant may carry on his liquor business and that is all it sought to do with respect to the liquor licenses of the complainant. In other words, it

claims that Sec. 6 of Chap. 57, Sub-Sec. VIII gives it the right to promulgate Rule 15 which establishes by proper rule and regulation whether or not any particular town, in the instant case the town of Hermon, is carrying on its business on daylight saving time, so-called, in spite of the fact that the town of Hermon did not see fit to vote at a special meeting of the Inhabitants thereof to adopt daylight saving time, so-called, for its private and municipal business affairs.

As we see the question and issue before this court it is, what right does the Commission have to establish in the town of Hermon daylight saving time, so-called, by a Commission rule and regulation. We do not have before us the question of whether or not the Commission can, under Sec. 22-C, Chap. 57, make certain changes in the hours which will give effect to daylight saving time, so-called. On that question we neither express or intimate any opinion but we do feel, however, that the Commission has greatly exceeded its authority when it pretends or attempts to put daylight saving time, so-called, into effect in the town of Hermon. The State Liquor Commission derives its power from the Legislature. It has no other powers than those which the Legislature has prescribed and nothing has been called to our attention which in any way authorizes the State Liquor Commission to establish daylight saving time in any community by the promulgation of some rule of its own. Commissions and bureaus of the State derive their powers from the Legislature and we have had occasion from time to time to consider how far a commission or a bureau of the State can go in making rules and regulations. We said in *Appeal of Glovsky*, 146 Me. 38, 41, 77 A. (2nd) 195, in referring to certain features of the State Liquor Law:

> "There is no inherent or constitutional right to engage in the liquor traffic, and whether one shall be permitted to exercise the privilege and under

what conditions and restrictions, is a matter for the people to determine, acting by and through the legislature."

We also said in *Larson* v. *New England Telephone & Telegraph Co.*, 141 Me. 326, 332, 44 A. (2nd) 1, in speaking of the powers of the Highway Commission:

"The Commission being purely a creature of statute is subject to the rule universally applicable to all bodies that owe their existence to legislative act. It must look to the statute for its authority."

We also said in *Cooper* v. *Fidelity Trust Company*, 134 Me. 40, 50, 180 A. 794, 799, in discussing the validity of acts of the Bank Commissioner, an agency of the State created by the Legislature:

"His duty is to administer the law, not to make it or set it aside. His directions to that effect, reported here, were clearly outside his authority and void."

We also said in *Alley* v. *Inhabitants of Edgecomb*, 53 Me. 446, 448, in speaking of the rights and powers of towns:

"They have no inherent right of legislation like that of the State, but act only by a delegated power which must be measured by the terms of the grant."

In the case of *Anheuser-Busch et al.* v. *Walton*, 135 Me. 57, 67, 68, 190 A. 297, a similar question came up as to how far the State Liquor Commission could go in making rules under said Sec. 6, Sub-Sec. VIII of Chap. 57, R. S., 1944 (then Public Laws of 1935, Chap. 179, Sec. 2), and we said:

"Its power to make rules and regulations extends only to such details of administration as are necessary to carry out and enforce the mandate of the legislature. What the commission has attempted to do in this instance constitutes a flagrant usurpation of a prerogative which belongs to the legis-

lature, and is subversive of those principles which are the foundation of orderly government."

We said in *Coca-Cola Bottling Plants, Inc., Aplt.* v. *Johnson,* 147 Me. 327, 332, 87 A. (2nd) 667:

> "Our duties are judicial in nature. We must guard against trespassing upon the fields of the legislative and executive branches of government. * * * Our task is to ascertain and to give effect to the intention of the legislature."

If changes are necessary for any reason whatsoever in the State Liquor Law and its administration, such changes must come from the Legislature. They cannot be effected by rule or regulation of the State Liquor Commission, nor can they be brought about by a decision of our court. We can only say this—what the Commission has tried to do in this case is a prerogative that belongs to the Legislature and until the Legislature gives the Commission power and directions to promulgate rules putting into effect by some method daylight saving time, the Commission greatly exceeds its authority in putting into effect the emphasized part of Rule 15 which the sitting justice held invalid and set aside.

As we view this matter the decision of the sitting justice in issuing a permanent injunction was correct and proper. The mandate will be

*Appeal dismissed.*

*Decree below affirmed.*