HARRY GOLDBAND *vs.* COMMISSIONER OF BANKS & another.
JACOB ANDREWS *vs.* SAME.
ROSE S. GOLDFINE *vs.* SAME.

Suffolk.    March 14, 15, 1923. — May 23, 1923.

Present: RUGG, C.J., BRALEY, DeCOURCY, CROSBY, & PIERCE, JJ.

*Trust Company,* Savings department, In liquidation. *Contract,* In writing. *Evidence,* Extrinsic affecting writing.

A man of business experience, somewhat familiar with banking, certificates of deposit, checking accounts and savings deposits, being solicited by the the vice-president of a trust company, which maintained a savings department, made two deposits as trustee for certain persons, refused to accept certificates of deposit as evidences of the bank's obligations, and received pass books, such as ordinarily were issued by the commercial department of the bank but with the words " on thirty-one days' notice " written across the face, the vice-president assuring him that these words meant that " as no checks would be drawn on the account, the bank might desire thirty-one days' notice before it repaid the money " and that interest would be paid him at the rate of four and one half per cent. Thereafter the same man made a deposit in his own name of $12,000 upon the same assurances, receiving a pass book which did not bear the words " on thirty-one days' notice " or any equivalent words. The deposits all were placed

in the commercial department by the bank officers. The depositor received the usual monthly statements issued by the commercial department of the trust company, with interest added monthly commonly at the savings department rate. The commissioner of banks took possession of the property and business of the trust company and the depositor by a bill in equity sought an adjudication that the deposits should be charged to the savings department. A master found that the plaintiff was justified in believing the representations made by the agent of the trust company, that the representations were such as to warrant a belief that the deposits were made in the savings department of the trust company and the further belief that the pass book was properly issued as representing a deposit in the savings department; and that there was no negligence in not making further inquiries to ascertain the department in which the deposit in truth was made. *Held,* that

(1) The deposit made by the plaintiff in his own name, with its additions and accretions, must be treated as a deposit in the savings department;

(2) That the deposit was in excess of the amount allowed to depositors in savings banks was not significant for the reason that no limit was placed by the statute on the amount which might be received by a trust company in its savings department from a single depositor;

(3) The plaintiff was entitled to have the amount due on this account at the time the commissioner of banks took possession established as a deposit in the savings department;

(4) The deposits, for which the plaintiff as trustee received pass books bearing the words "on thirty-one days' notice," must be treated as in the commercial department.

A certificate of deposit, issued by a trust company having a savings department, as a matter of law is not the usual evidence of a deposit in the savings department, but is in form an obligation commonly issued and recognized as an incident of commercial banking.

As a matter of law, a certificate of deposit, or a pass book of the form usually issued by the commercial department of a trust company and bearing the words "on thirty-one days' notice," indicates a deposit upon special terms and conditions agreed upon between the depositor and the trust company, is issued within the authority conferred upon trust companies by G. L. c. 172, § 31, and, upon liquidation of the trust company by the commissioner of banks, money thus received must be treated as a general deposit and not as a deposit in a savings department maintained by the company.

Time deposits can be taken by a trust company only in its commercial department; special agreements as to time of withdrawal and interest are not permissible in the savings department, where all depositors are treated as a class and must stand on the same footing, save in respects not here material.

A certificate of deposit, and a pass book such as usually is issued for a deposit in the commercial department of a trust company but with the words "on thirty-one days' notice" written therein, which respectively were issued to a depositor by a trust company having a savings department, are contracts in writing and as a matter of substantive law they cannot be varied by parol evidence of antecedent negotiations or contemporaneous qualifications.

As a matter of substantive law, in the absence of allegations or proof of fraud on the part of the trust company, deposits made by persons who received the certificate of deposit and the pass book above described must be taken upon liquidation of the company by the commissioner of banks to have been made in the commercial and not in the savings department of the trust company, although such depositor was justified in believing representations made by an agent of the trust company, which were such as to warrant a belief that the deposits were made in the savings department of the trust company and that the certificate of deposit or book, as the case might be, was properly issued as representing a deposit in the savings department, and although there was no negligence on the part of the depositor in not making further inquiries to ascertain the department in which the deposit in truth was made.

THREE SUITS IN EQUITY, filed in the Supreme Judicial Court respectively on April 22, April 27, and May 16, 1922, and afterwards amended, against the commissioner of banks in possession of the property and business of Cosmopolitan Trust Company, each seeking to have deposits made by the plaintiffs declared to be in the savings department of the trust company, instead of in the commercial department, where the trust company had placed them.

Each suit was referred to a master. The deposits to which the first suit referred were $5,000 in the name of Harry Goldband, trustee for Hyman Goldband, $3,866.50, in his name as trustee for Anna Colpak, and, in his personal name, $12,000. On the last account, $1,100 was added afterwards and then $1,500 was withdrawn. Other material findings by the masters are described in the opinion. There were no exceptions to the masters' reports and, by order of *Braley*, J., the three suits were consolidated and were reserved upon the pleadings and the masters' reports for determination by the full court.

*T. M. Vinson*, for the plaintiff Goldband.

*I. Harris*, for the plaintiff Goldfine.

*E. Greenhood*, (*A. A. Ginzberg* with him,) for the plaintiff Andrews.

*D. L. Smith*, (*H. O. Cushman* with him,) for the defendants.

RUGG, C.J. These are three suits wherein the several plaintiffs seek to have established rights as depositors in the savings instead of the commercial department of the Cosmopolitan Trust Company. Each suit has been re-

·ferred to a master under a rule requiring him to find the facts, and is reserved for our determination on the pleadings and the master's report.

Since no evidence is reported, the findings of fact made by the master must be accepted as final, because on the face of the report they are not mutually inconsistent nor contradictory nor plainly wrong. *Glover* v. *Waltham Laundry Co.* 235 Mass. 330, 334. *Daniels* v. *Daniels,* 240 Mass. 380, 385. *Jacobs* v. *Anderson,* 244 Mass. 125.

The facts in the Goldband case are that, after repeated requests by a vice-president of the Trust Company, for that purpose duly authorized, Goldband presented for deposit $5,000 in trust for his brother. The vice-president said that interest would be paid at the rate of four and one half per cent and offered a certificate of deposit to the plaintiff, who refused it and demanded a book. Thereupon a pass book was handed to him like those ordinarily used in the commercial department of the trust company, acknowledging the deposit, and across its first page was stamped, " On thirty-one days' notice," which was explained to mean that " as no checks would be drawn on the account, the bank might desire thirty-one days' notice before it repaid the money." ° A second deposit later was made by Goldband as trustee for another person, with substantially the same circumstances. A third deposit was made on February 3, 1919, in the name of Goldband alone, under similar conditions except that no words equivalent to " On thirty-one days' notice " were on this pass book. This plaintiff received the usual monthly statements issued by the commercial department of the trust company, with interest added monthly commonly at the savings department rate.

The facts in the Andrews case are that he was solicited to deposit money in the trust company, that he sought and received from the trust company a mortgage loan on property of a charitable society of which he was president, upon his promise to deposit a large sum in his own name in the savings department of the trust company and to cause the account of the Society to be kept in the commercial department of

the trust company. The latter promise was kept. In respect to the former promise, the plaintiff handed his check and cash to the amount of $10,000 to the president of the trust company and received a certificate of deposit of the trust company for that amount payable to his order " upon surrender of this Certificate. Thirty days notice." The president of the trust company stated at this time that this was the form used by its savings department on deposits requiring thirty days' notice, and would bear interest at the rate of five per cent, the rate then being paid in the savings department. Another certificate of deposit for $1,500 in return for a deposit of that amount was issued to the plaintiff under date of June 7, 1920, on the face of which was " Demand 5%."

In the Goldfine case the facts are that the husband of that plaintiff, having been often solicited by the trust company for deposits, finally at his own office gave $20,000 for deposit in the savings department to the vice-president of the trust company (who promised that the rate of interest to be paid would be five and a half per cent), and later received by mail a certificate of deposit for that sum payable to the order of the plaintiff on surrender of the certificate. Interest in fact was paid at the rate of five per cent, except for the last month when the rate was five and a half per cent. During most of the period of this deposit the rate paid in the savings department was five per cent and never more than that.

Facts common to all the cases are that the Cosmopolitan Trust Company was organized under the laws of this Commonwealth and at the time of the events here in question conducted both a commercial department for the transaction of general banking business and a savings department for savings deposits, a separate set of books being kept for each department; that all the accounts of the several plaintiffs were as matter of bookkeeping carried in its commercial department; that certificates of deposits were issued by the commercial department alone and were carried only on the ledgers of that department and treated by the trust company as commercial deposits; that for deposits in its savings department the trust company issued deposit books; that the

plaintiffs Goldband and Andrews and the agent who acted for the third plaintiff, all are men of business experience and somewhat familiar with banking, certificates of deposit, checking accounts and savings deposits. The master has found that each of the plaintiffs was justified in believing the representations made by the agent of the trust company; that the representations were such as to warrant a belief that the deposits were made in the savings department of the trust company, and the further belief that the book or certificate of deposit, as the case might be, was properly issued as representing a deposit in the savings department; and that there was no negligence in not making further inquiries to ascertain the department in which the deposit in truth was made.

The deposit made by Goldband on February 3, 1919, in his own name, with its additions and accretions, must be treated as a deposit in the savings department. No definite rate of interest was stipulated. No specific notice as a prerequisite to withdrawal was required. Goldband supposed it was a savings department deposit and rightly was led to this belief by the representations of the agent of the defendant. He received a pass book in which his deposit was entered, which apparently indicated that his deposit could be withdrawn only on the presentation of the pass book, and which permitted successive deposits or withdrawals to be entered thereon. This comes within the first class described in G. L. c. 172, § 60, as deposits received and held in the savings department. The depositor was not responsible for the failure of the trust company or its agents to enter this deposit on the books of the savings department or treat it as a part of the assets of that department. There is no finding that he had knowledge of this fact or of the business methods or bookkeeping practices of the defendant. *Sanborn* v. *Fireman's Ins. Co.* 16 Gray, 448, 455.

That this deposit is in excess of the amount allowed to depositors in savings banks is not significant for the reason that no limit is placed by the statute on the amount which may be received by a trust company in its savings department from a single depositor. *Old Colony Trust Co.* v.

*Commonwealth*, 220 Mass. 409, 411.   *J. S. Lang Engineering Co.* v. *Commonwealth*, 231 Mass. 367.   This branch of the Goldband suit comes within the authority of *Commissioner of Banks* v. *Jordan Marsh Co.* 241 Mass. 273, and *Commissioner of Banks, petitioner, in re Hanover Trust Co.* 242 Mass. 343.   He is entitled to have the amount due on this account at the time the commissioner of banks took possession of the trust company established as a deposit in the savings department.

The other deposits of Goldband and the deposits of the other plaintiffs stand on different ground.

The certificates of deposit issued to the plaintiffs Andrews and Goldfine as matter of law are not the usual evidence of deposit in the savings department.   They are in form obligations commonly issued and recognized as incidents of commercial banking.   They have for the most part the characteristics of promissory notes.   The respects in which they differ do not aid these plaintiffs.   See, for discussion of their legal nature, *Shute* v. *Pacific National Bank,* 136 Mass. 487; *Pierce* v. *State National Bank of Boston,* 215 Mass. 18; *Merchants' Bank* v. *State Bank,* 10 Wall. 604, 648. Some of the certificates here in issue are by express terms made payable on time.   Those not so payable are by law payable on not less than thirty days' notice, G. L. c. 172, § 32, and some show on the face the interest to be paid. These elements, as matter of construction of written instruments, indicate deposits upon special terms and conditions agreed upon between the depositor and the trust company. The issuance of such certificates is within the authority conferred upon trust companies by G. L. c. 172, § 31.   Money thus received must be treated as general deposits and not as deposits in the savings department.

The two deposit books issued to Goldband as trustee indicate commercial rather than savings department transactions.   They were in the form used by the commercial department.   They were payable, not on demand, but on a definite time after notice.   Monthly statements, the ordinary accompaniment of commercial department deposits, regularly were sent on those accounts.

Time deposits can be taken by a trust company only in its commercial department. Special agreements as to time of withdrawal and interest are not permissible in the savings department, where all depositors are treated as a class and must stand on the same footing, save in respects not here material. G. L. c. 172, §§ 31, 60, 61, 64, 65; c. 167, §§ 16, 17.

It is provided by G. L. c. 172, § 32, that no trust company shall " allow a time deposit represented by a certificate or written agreement to be withdrawn before the time specified therein, and where such certificate or agreement does not specify any definite date for withdrawal no such corporation shall allow such deposit to be withdrawn without receiving notice of at least thirty days." It is manifest that all these deposits fall within this description. They thereby are stamped as matter of law as deposits in the commercial department. The provisions as to withdrawals from the savings department on notice or on time are quite different and are found in G. L. 172, § 66.

All these contracts are in writing. As matter of substantive law they cannot be varied by parol evidence of antecedent negotiation or contemporaneous qualification. *McCusker* v. *Geiger,* 195 Mass. 46, 53. *Mears* v. *Smith,* 199 Mass. 319, 322. *Butterick Publishing Co.* v. *Fisher,* 203 Mass. 122, 133. *Spevack* v. *Budish,* 238 Mass. 215, 217. *Underwood* v. *Simonds,* 12 Met. 275. *Eustace* v. *Dickey,* 240 Mass. 55, 72. *Billings* v. *Billings,* 10 Cush. 178. This rule applies in equity as well as in law. *Commonwealth Trust Co.* v. *Coveney,* 200 Mass. 379, 381.

The several bills do not allege and the facts found by the master do not establish fraud on the part of the trust company in not giving to the plaintiffs contracts showing plainly deposits in the savings department. The plaintiffs each received a contract expressing in writing the arrangement made. The trust company could make such contracts only in its capacity as a general banking institution. Although the plaintiffs supposed that they were making deposits in the savings department, the terms of the agreements made, to which they freely assented, were such that the deposits could not lawfully be made in that department.

All these contracts were made long before the commissioner of banks took possession of the trust company. They were contracts in writing on their face purporting as matter of law to be with the commercial department. According to their tenor they conferred advantages in times of prosperity over contracts permissible by the savings department with its depositors. They cannot now be changed to the disadvantage of those depositors originally confined to the savings department. While not strictly analogous, the principles followed in *Tremont Trust Co.* v. *Baker*, 243 Mass. 530, *Bailey* v. *Commissioner of Banks*, 244 Mass. 499, and *Tremont Trust Co.* v. *C. H. Graham Furniture Co.* 244 Mass. 134, show that the plaintiffs ought not to prevail. The fundamental equities are as strong in favor of this trust fund against these claimants in the cases at bar as in the three recent decisions last cited.

The securities and assets held in the savings department of a trust company constitute trust property for the benefit of depositors in that department until they are paid in full. *Commissioner of Banks* v. *Cosmopolitan Trust Co.* 240 Mass. 254, 259. *Commissioner of Banks, petitioner, in re Prudential Trust Co.* 240 Mass. 478, 483. *Commissioner of Banks, petitioner, In re Cosmopolitan Trust Co.* 241 Mass. 346, 351. Such a trust fund cannot rightly be depleted in the manner here sought for the benefit of depositors under contracts like those of these plaintiffs. These claims must stand as already proved and allowed against the general assets of the trust company.

The result is that in the Goldband suit decree may be entered in his favor only for the amount shown due on the deposit book issued to him on February 3, 1919, and in the other suits the bills may be dismissed.

*So ordered.*