EVA WASSERMAN *vs.* COSMOPOLITAN TRUST COMPANY
& another.

Suffolk.   January 12, 1925. — April 25, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & WAIT, JJ.

*Trust Company*, In liquidation, Officers and agents. *Agency*, Scope of authority, Fraud of agent. *Contract*, What constitutes, Of depositor with trust company.

In a suit in equity against a trust company and the commissioner of banks, in possession of its property and business for purposes of liquidation, to enforce rights of the plaintiff as a depositor in the savings department of the trust company, it was found by a master without a report of the evidence that, at a time of keen competition among trust companies for deposits, a vice-president of the defendant trust company, who was particularly assigned to and devoted himself to the procuring of deposits, induced the plaintiff, a woman, who, while she could sign her name and count, could neither read nor write the English language, to transfer her savings account from another trust company to the defendant trust company, and gave her a certificate which was for a deposit in the commercial department of the trust company and not in its savings department, falsely representing to her that the deposit was in the savings department. The deposit was entered in the books of the commercial department by the trust company. *Held*, that
(1) The acts of the vice-president bound the trust company;
(2) The trust company could not take advantage of the fraud of its own agent to defeat the plaintiff's claim;
(3) By reason of the fraud of the trust company's agent, the plaintiff never entered into the form of contract on which the defendants relied;
(4) The failure of the trust company or its agents to enter or to treat the deposit as a savings deposit did not do away with the contract actually made, which was a contract in the savings department when the commissioner of banks assumed control, even if it was not so designated on the company's books.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on May 9, 1922, and afterwards amended, against the Cosmopolitan Trust Company and the commissioner of banks, in possession of the trust company's property and business, seeking to enforce rights of the plaintiff as a depositor in the savings department of the defendant trust company.

The suit was referred to a master. Findings by the master are described in the opinion. There was no report of evidence. The suit was heard by *Carroll,* J., who ordered a decree for the plaintiff and reported the suit to the full court for determination.

*D. L. Smith,* for the defendants.

*A. L. Taylor,* for the plaintiff.

BRALEY, J. This is a suit in equity in which the plaintiff asks to have a deposit of $12,523.12 standing in her name on the books of the commercial department of the defendant Cosmopolitan Trust Company, September 1, 1920, declared to be a deposit in the savings department, and that the defendant the commissioner of banks, who on September 25, 1920, took possession of the assets of the company for the purpose of liquidating and winding up its affairs, be ordered upon the surrender of the certificate she now holds, to issue to her a certificate, or proof of claim for the same amount against the funds of the savings department. See R. L. c. 116; St. 1910, c. 399; G. L. c. 167. The answer admits that the company received the money, which had not been paid when it ceased to transact business.

The certificate of deposit appearing in the record was upon its face a time deposit which could be taken only in the commercial department. *Goldband* v. *Commissioner of Banks,* 245 Mass. 143, 150. If this was the contract, it cannot be transformed by parol evidence into a different contract of deposit. *Goldband* v. *Commissioner of Banks, supra.* The plaintiff rests her right to relief on the ground, that the trust company received and accepted her deposit as a deposit to be entered in the savings department.

The history of the transaction is fully stated in the master's report, whose findings of fact on unreported evidence are conclusive. The plaintiff had a deposit in the savings department of the Tremont Trust Company, which, with accrued interest at five per centum, apparently amounted to $12,523.12. But late in August, 1920, at the solicitations of one Richard Pinksohn, a vice-president of the defendant trust company, who promised her an increased rate of interest, she gave him an order under which he withdrew the

deposit and placed it with the defendant trust company. The plaintiff, who previously had made deposits in the savings departments of other trust companies as well as in the defendant company, could neither read nor write; she could only "sign her name and count," which conditions were known to Pinksohn. He prepared the order, and she signed it with his assurance and representations, that the money would be redeposited in the defendant's savings department. But, having made the deposit in the commercial department, he called on the plaintiff, and, after stating that he had placed the money in the savings department where the rate of interest would be five and one-half per centum, gave her "a slip of paper," and in response to her inquiry for a pass book assured her, that the paper was the same as a "bank" book to be "put . . . away safely." The master states that without negligence she believed and acted on the statement of Pinksohn, that the deposit was to be, and had been made in the savings department, and that he knew the deposit was not in accordance with her directions to him, and the agreement made with her. It is plain, however, that the contract of Pinksohn is not the contract shown on the books of the company with which the "slip of paper" or certificate corresponds. It also was not the individual contract of Pinksohn, and the question is, whether the contract he negotiated bound the company.

The report shows that there was keen competition in the banking business in which the company engaged, and that it was in urgent need of more deposits, or new accounts. These conditions caused the employment of Pinksohn, who had large acquaintance with business men and a long and varied banking experience. His duties were to solicit deposits and to secure new accounts, which required that substantially all of his time should be spent outside of the company's banking rooms, and he interviewed prospective depositors wherever he could find them. When acting as vice-president "his particular duty was to solicit deposits; that in pursuance of said duties, with the knowledge and under the direction of the officers . . . the larger part of his time was spent outside the . . . banking office,

soliciting deposits. . . ." A very active canvass followed, and new deposits "amounting to between three and four hundred thousand dollars" came in, "substantially all of which amount was secured upon . . . representation that such deposits would be treated as 'savings deposits,' or 'special savings deposits.'" It follows, that the company in its hour of need, and for its own advantage and gain, held him out to the public as an agent authorized to solicit and obtain more depositors. The ostensible powers of an agent are his real powers, and limitations, if any, as between the principal, and agent of an apparent general authority, do not affect third parties, where as in the case at bar they have no knowledge of such restrictions. *Danforth* v. *Chandler,* 237 Mass. 518, 522. *Cauman* v. *American Credit Indemnity Co.* 228 Mass. 279, 283. *Fishkill Savings Institution* v. *National Bank of Fishkill,* 80 N. Y. 162. This principle is not modified by the notation on the certificate or "slip of paper," "Due Mar. 1, 1921." The plaintiff not only was misled by the statements of Pinksohn, but the company could not take advantage of its own fraud to defeat her claim. *Episcopal Charitable Society* v. *Episcopal Church of Dedham,* 1 Pick. 371. *Steckel* v. *First National Bank of Allentown,* 93 Penn. St. 376.

The mere ignorance of the plaintiff of the contents of the paper would be insufficient to change its purport if she had voluntarily accepted it. *Atlas Shoe Co.* v. *Bloom,* 209 Mass. 563. *Secoulsky* v. *Oceanic Steam Navigation Co.* 223 Mass. 465. *West* v. *State Street Exchange,* 250 Mass. 537. If a regular pass book had been issued, and received, it could have been impeached on the ground of fraud, or error, by the plaintiff, or by the company. *Union Bank* v. *Knapp,* 3 Pick. 96. *Greenhalge Co.* v. *Farmers' National Bank,* 226 Penn. St. 184. But, having been induced and misled by the material misstatements of Pinksohn, who knew of her ignorance of the contents of the paper, she never entered into the form of contract on which the defendants rely. *O'Donnell* v. *Clinton,* 145 Mass. 461, 462.

The failure of the company or its agents to enter, or to treat the deposit as a savings deposit does not do away with

the contract actually made. *Goldband* v. *Commissioner of Banks*, 245 Mass. 143, 146. It could not without her consent be abrogated by the company. *Davis* v. *Old Colony Railroad*, 131 Mass. 258, 275.

The master's general finding that Pinksohn acted within the scope of his employment is also warranted by his subsidiary findings, and no error of law, as the company contends, is disclosed. *National Security Bank* v. *Cushman*, 120 Mass. 490. *Rintimaki* v. *Cunard Steamship Co. Ltd.* 205 Mass. 115, 117. *Boston Food Products Co.* v. *P. Wilson & Co.* 245 Mass. 560. *McDonald* v. *Dr. McKnight, Inc.* 248 Mass. 43, 48. The contract was a contract of deposit in the savings department when the commissioner assumed control, even if not so designated on the company's books. *Commissioner of Banks* v. *Cosmopolitan Trust Co.* 240 Mass. 254, 259. See *Cunningham* v. *Commissioner of Banks,* 249 Mass. 401. Accordingly the plaintiff is entitled to participate with other depositors of her class in the distribution of assets.

The exception of the plaintiff to the master's report relating to the exclusion of evidence has become immaterial, and the defendants' exceptions are untenable for reasons sufficiently stated. The result is that the interlocutory decree overruling the exceptions and confirming the report is affirmed, and a final decree is to be entered directing the commissioner to allow the plaintiff to prove her claim as a savings depositor.

*Ordered accordingly.*