**Neil J. HENRY, Plaintiff,**

**v.**

**BLACK & DECKER INC., Defendant.**

**Civ. No. 91–937.**

United States District Court, D. New Jersey.

Dec. 27, 1991.

Suzanne C. Low, Lake Hopatcong, N.J., for plaintiff.

Jerry Wohlegemuth, Apruzzese, McDermott, Mastro & Murphy, Liberty Corner, N.J., for defendant.

## OPINION

STANLEY R. CHESLER, United States Magistrate Judge.

## INTRODUCTION

This matter comes before the Court upon defendant's motion for summary judgment and plaintiff's cross-motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. This matter was referred to me by the Honorable Harold A. Ackerman. The parties have consented to have all issues in this matter tried before the undersigned pursuant to section 636(c) of Title 28 of the United States Code. Oral argument was heard on November 25, 1991.

## BACKGROUND

Prior to 1970, plaintiff Neil J. Henry was employed as the Vice–President of Red Sherman Associates, Inc. ("RSA"). Deposition of Neil J. Henry ("Henry Deposition") at 7. In May, 1970, RSA was purchased by USM Corporation ("USM"). At the time of the purchase, the plaintiff and J.D. Sherman ("Sherman") were the sole stockholders of RSA. Amended Complaint ¶ 8. RSA was incorporated as a division of the Farrel Company ("Farrel"), which was itself a division of USM. Amended Com-

plaint ¶ 8. Emhart Corporation ("Emhart") acquired USM in May, 1976; the Black & Decker Corporation, the parent company of defendant Black & Decker, Inc., acquired Emhart in May, 1989. Henry Deposition at 9–10; Amended Complaint ¶ 1. Since that time, defendant has become the sponsor of certain employee benefit plans formerly sponsored by Emhart.[1] Amended Complaint ¶ 8.

Pursuant to a contractual agreement between plaintiff and USM, plaintiff was employed in an executive capacity for a five year period beginning in 1970. Amended Complaint ¶ 5. Plaintiff's contract provided for participation in the group hospitalization, profit sharing, and pension plans of USM "on a basis equal to or more favorable than" that which had been provided by RSA. Amended Complaint ¶ 5; Henry Deposition Exhibit 1. The contract also stated that it could not be modified except in writing. Henry Deposition Exhibit 1. Sherman's written agreement with USM was essentially identical to plaintiff's contract. Amended Complaint ¶ 6.

Both plaintiff and Sherman elected to terminate their employment with defendant in May 1975 upon the expiration of their employment contracts. Having elected to sever their employment, both also terminated their coverage under defendant's group medical insurance plan. At the time plaintiff and Sherman terminated their employment with defendant, plaintiff was forty-six years old and Sherman was sixty-one years old. Both then became independent contractors for defendant in a sales representative capacity. Henry Deposition at 14.

In April, 1978, defendant noticed that it had allowed Sherman to terminate his employment without apprising him of his eligibility to elect early retirement. In an effort to rectify its mistake, defendant notified Sherman of the error and, upon Sherman's election, formally changed his status to reflect early retirement.[2] In September, 1979, Sherman began receiving retiree medical benefits from defendant. Henry Deposition at 52–53.

In 1988, plaintiff contacted defendant to request information about his retirement package. In response to plaintiff's request for information, defendant informed plaintiff that he was not eligible for retiree medical benefits because he did not retire from active employment with defendant when he terminated his employment in 1975 and he failed to meet the age and service requirement. Henry Deposition at 38–39.

Plaintiff claims that he believed that retiree medical coverage was part of the retirement plan to which he was entitled pursuant to the buyout and employment contract with defendant. Moreover, plaintiff asserts that it was his understanding that he and Sherman would be treated equally by defendant. As a result of his beliefs, plaintiff did not arrange a medical insurance retirement program for himself; thus, plaintiff obtained private medical insurance that he claims is not as complete as that which would have been available to him under defendant's group medical insurance plan.

Plaintiff commenced this action against defendant Black & Decker, Inc. in New Jersey Superior Court. The Amended Complaint alleges that plaintiff has relied to his detriment on defendant's representation that he would be entitled to medical benefits upon his retirement. The Amended Complaint seeks compensatory damages, including, but not limited to, reimbursement for the individual medical insurance policy which plaintiff was forced to obtain since the date his employment with defendant was terminated, future medical benefits, punitive damages, and attorney's fees.

---

1. Unless otherwise noted, USM, Farrel, Emhart, and Black & Decker Inc. hereafter are referred to collectively as "defendant" or "the company."

2. To be eligible for retiree medical benefits under defendant's benefit plan, an employee must have retired from active employment with the company at age sixty with ten years of service (early retirement), at age sixty-five (normal retirement), or after age sixty-five (deferred retirement). Henry Deposition Exhibit 7.

Defendant asserts that plaintiff's claim for benefits presents a cause of action under ERISA and, therefore, has removed this case to federal court pursuant to 28 *U.S.C.* § 1441(a). Defendant now moves for summary judgment. In support of its motion, defendant maintains that plaintiff's common law claim for retiree medical benefits is preempted by ERISA and, under ERISA, plaintiff cannot prevail on his claim as a matter of law. Defendant asserts that plaintiff has no standing to recover retiree medical benefits under ERISA. Defendant further maintains that, even if plaintiff suc-· ceeds in establishing standing to pursue his claim for benefits under ERISA, plaintiff is not eligible for retiree medical benefits because plaintiff voluntarily terminated his employment with defendant and, therefore, cannot meet the prerequisite to eligibility of retirement from active employment.

Plaintiff rejects defendant's assertion that plaintiff's common law claim for retiree medical benefits is preempted by ERISA. In response to defendant's motion for summary judgment, plaintiff now cross-moves for summary judgment. Plaintiff argues that he is entitled to prevail in this action as a matter of law under common law contract principles. Plaintiff asserts that he relied to his detriment upon defendant's promise to provide him with retiree medical benefits and that, therefore, defendant is equitably estopped from denying plaintiff such benefits.

In its reply brief, defendant reiterates that plaintiff's common law contract claim for retiree health insurance benefits is preempted by ERISA. Defendant maintains that because plaintiff has not asserted any other cause of action and does not argue that he can prevail under ERISA as a matter of law, plaintiff's complaint should be dismissed. Moreover, defendant argues that even if plaintiff's common law estoppel claim was not preempted by ERISA, it nevertheless must fail because plaintiff has not established the existence of any binding contractual promise made by defendant to provide plaintiff with a retirement package that included medical benefits.

## DISCUSSION

Before confronting the parties' motions for summary judgment, the Court first must address the issue of preemption.

### A. Preemption Under ERISA

■ To determine whether federal law preempts a state statute, the court must look to congressional intent. *See FMC Corp. v. Holliday*, 498 U.S. ——, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95, 103 S.Ct. 2890, 2898–99, 77 L.Ed.2d 490 (1983). The Supreme Court has held that Congress's intent in enacting ERISA was to preempt completely the area of employee benefit plans and to make regulation of benefit plans solely a federal concern. *Cromwell v. Equicor–Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir.1991) (*citing Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

■ Section 514(a) of ERISA provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 *U.S.C.* § 1144(a). This section establishes as an area of exclusive federal concern the subject of every state law that "relates to" an employee benefit plan governed by ERISA. 29 *U.S.C.* § 1003(a). Thus, the Court must determine whether plaintiff's claims are based on state laws which "relate to" the employee benefit plan at issue.[3]

The Supreme Court consistently has interpreted the term "relate to" as embracing a broad spectrum of state laws. *See e.g., Ingersoll–Rand Co. v. McClendon*, —— U.S. ——, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990); *Pilot Life*, 481 U.S. at 41, 107 S.Ct. at 1549–50; *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542,

---

**3.** The term, "employee benefit plan," includes "employee welfare benefit plan," which is any plan established or maintained by an employer and/or an employee organization to provide for its participants or their beneficiaries medical or hospital care or benefits. 29 *U.S.C.* §§ 1002(1), (3). The group hospitalization plan at issue constitutes an employee welfare benefit plan within the meaning of ERISA.

95 L.Ed.2d 55 (1987); *Shaw,* 463 U.S. at 98, 103 S.Ct. at 2900. The Court has held that a law relates to an employee benefit plan if it has " 'a connection with or reference to such a plan.' " *Holliday,* 498 U.S. at ——, 111 S.Ct. at 404 (*quoting Shaw,* 463 U.S. at 96–97, 103 S.Ct. at 2900). Under this broad, common-sense meaning, a state law may "relate to" a benefit plan, and thereby be preempted, even if the law is not designed specifically to affect such a plan. *Ingersoll–Rand,* —— U.S. at ——, 111 S.Ct. at 484; *Pilot Life,* 481 U.S. at 47, 107 S.Ct. at 1552–53.

Courts, however, also have concluded, notwithstanding the sweeping effect intended for ERISA preemption, that not every state law affecting ERISA plans is preempted. State laws that merely affect employee benefit plans in too tenuous or remote a manner to warrant a finding that the state law "relates to" the plan are not preempted. *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21.

■ In distinguishing between state laws that "relate to" benefit plans within the meaning of section 514(a) and state laws that affect such plans in too tenuous a manner to warrant such a finding, the Second Circuit has determined that the types of state laws that have been deemed preempted are:

> those that provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee. Those that have not been preempted are laws of general application—often traditional exercises of state power or regulatory authority—whose effect on ERISA plans is incidental.

*Aetna Life Ins. Co. v. Borges,* 869 F.2d 142, 146 (2d Cir.), *cert. denied* 493 U.S. 811, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989). Thus, what triggers ERISA preemption is not just an indirect effect on administrative procedures, but rather an effect on the primary administrative functions of benefit plans. *See Id.* at 147–48.

Applying these standards to this case, plaintiff's common law contract claims "relate to" defendant's group hospitalization plan within the meaning of section 514(a) of ERISA. The common law of contracts is not the type of state law that suffers preemption because it directly refers, or solely applies, to the field of employee benefit plans. *See Aetna Life Ins.,* 869 F.2d at 146; *Sandler v. New York News, Inc.,* 721 F.Supp. 506, 512 (S.D.N.Y.1989). Plaintiff's contract claims, however, do seek future medical benefits. The common law contract theory upon which plaintiff relies, therefore, provides an alternative cause of action to employees to collect benefits protected by ERISA. Thus, plaintiff's contract theory falls within one of the classes of state laws or actions that the Second Circuit recognizes as preempted by section 514(a). *See Sandler,* 721 F.Supp. at 512; *cf. McNamee v. Bethlehem Steel Corp.,* 692 F.Supp. 1477, 1480 (E.D.N.Y.1988) (where employee sought neither benefits under the plan nor damages for defendant's failure to provide such benefits, but rather sought damages for employer's allegedly wrongful failure to bridge an employment gap and to retain employee long enough to acquire a pension and for alleged misrepresentation to arrange for such a bridge and continuation of employment, court held that plaintiff's claims did not "relate to" defendant's plan within the meaning of section 514(a)).

In *Labus v. Navistar Int'l Transp. Corp.,* 740 F.Supp. 1053 (D.N.J.1990), a former employee claimed that he was improperly denied benefits from defendant corporation's early retirement benefits program. Plaintiff argued that defendant's conduct caused him to rely to his detriment that such benefits would be forthcoming. The Court determined that plaintiff's claim related to the employee benefit plan because he asserted that he was denied benefits; therefore, the Court held that plaintiff's state law claim of estoppel was preempted by ERISA. *Labus,* 740 F.Supp. at 1065; *see also Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 62, 107 S.Ct. 1542, 1545–46, 95 L.Ed.2d 55 (1987) (holding that a common law contract claim for recovery of

benefits was preempted by ERISA); *Pane v. RCA Corp.*, 868 F.2d 631 (3d Cir.1989) (holding that state law claims for breach of contract were preempted by ERISA); *Shiffler v. Equitable Life Assur. Soc.*, 838 F.2d 78, 82 (3d Cir.1988) (holding that a widow's claim of breach of contract for failing to pay benefits under her deceased husband's insurance plan was preempted by ERISA because, regardless of how her action was characterized, her goal was to recover benefits under the plan); *Gilbert v. Burlington Industries, Inc.*, 765 F.2d 320, 328 (2d Cir.1985), *aff'd* 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986) (citing numerous decisions finding claims for relief under the common law of contracts preempted by ERISA).

Therefore, because plaintiff's common law contract claim for retiree medical benefits "relates to" defendant's group hospitalization plan within the meaning of section 514(a) of ERISA, plaintiff's claim is preempted under ERISA.

### B. Summary Judgment

The court may grant summary judgment only if the pleadings, supporting papers, affidavits, and admissions on file, when viewed with all inferences in favor of the nonmoving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c); *see Todaro v. Bowman*, 872 F.2d 43, 46 (3d Cir. 1989); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.), *cert. dism'd*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987).

At the summary judgment stage, the judge's function is not to weigh the evidence and discern the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with regard to that issue. *Id.* at 248, 106 S.Ct. at 2510. A fact is material if it influences the outcome of the action under the governing substantive law. *Id.*

Thus, the moving party essentially bears two burdens. First, the moving party bears the burden of production, of making a prima facie showing that it is entitled to summary judgment. Once such a showing is made, this burden shifts to the nonmoving party, who must prove that the moving party is not entitled to summary judgment. Second, the moving party bears the burden of persuasion. This burden is a stringent one which always remains with the moving party. If there remains any doubt as to whether a trial is necessary, summary judgment should not be granted. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330–33, 106 S.Ct. 2548, 2556–58, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–61, 90 S.Ct. 1598, 1608–10, 26 L.Ed.2d 142 (1970); *see generally* C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2727 (2d ed., 1983).

Here, each party accepts as true the facts as asserted by the other party. Thus, both plaintiff and defendant maintain that, pursuant to Rule 12 G of the General Rules of this Court, there exists no genuine issue with respect to any material facts.

In its moving papers, defendant claims that, as a matter of law, plaintiff cannot establish a cause of action under ERISA because plaintiff is not a participant under the health plan and, therefore, lacks standing to recover retiree medical benefits, because plaintiff does not meet the eligibility requirements for coverage, and because plaintiff cannot establish any other basis for obtaining such relief. Plaintiff does not contest these assertions.

In his brief, plaintiff claims that he has established a cause of action under state contract law for the recovery of medical insurance benefits and, therefore, is entitled to prevail as a matter of law. Plaintiff argues that he was promised implicitly retiree medical benefits as part of his employment contract with defendant, that he relied on defendant's implicit promise to provide such benefits, and that, therefore, he did not otherwise provide retiree medical insurance benefits for himself. Plaintiff further argues that defendant is equitably

estopped from denying him his contractual medical benefits.

### 1. The Applicable Law

■ Section 1132 of Title 29 of the United States Code provides that a civil action may be brought in a United States district court by a participant or beneficiary to recover benefits due him or to clarify his rights to future benefits under a plan. 29 *U.S.C.* § 1132(a)(1)(B), (e)(1); *see Jameson v. Bethlehem Steel Corp. Pension Plan etc.*, 765 F.2d 49, 51 (3d Cir.1985), *cert. denied*, 479 U.S. 1089, 107 S.Ct. 1297, 94 L.Ed.2d 153 (1987). Assuming that plaintiff is a participant or beneficiary under defendant's group hospitalization plan,[4] plaintiff's claim for future medical benefits under the plan clearly falls within the scope of ERISA's jurisdictional provision.

■ Section 514(a) of ERISA, which became effective on January 1, 1975, provides that provisions of ERISA "shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." 29 *U.S.C.* § 1144(a). ERISA's substantive provisions, however, do not supersede state law as to events that occurred before January 1, 1975.[5]

In *Jameson*, the Third Circuit held that section 514(b) is a direction as to choice of laws and is intended to ensure that ERISA is not applied retroactively. 765 F.2d at 51. Thus, once jurisdiction has attached, section 514(b) is meant only to inform the court that ERISA's substantive provisions are not to be employed to determine the law at the time of the incidents occurring

before January 1, 1975. The reference made to state law does not deny jurisdiction to the federal courts. *Id.* at 52; *but see Menhorn v. Firestone Tire & Rubber Co.*, 738 F.2d 1496 (9th Cir.1984) (employee's action against employer for denying employee benefits under retirement plan brought subsequent to effective date of ERISA was insufficient to give district court jurisdiction over the action where the action was based on events occurring before ERISA's effective date).

The employment agreement entered into between plaintiff and USM in 1970 contains a choice of law provision requiring that the agreement be construed in accordance with and governed by the laws of the Commonwealth of Massachusetts. Henry Deposition Exhibit 1 ¶ 8. Therefore, in addressing the events that occurred prior to January 1, 1975, the Court will apply Massachusetts law.

### 2. Eligibility Under the Plan

In its moving papers, defendant argues that plaintiff cannot prevail in this action as a matter of law because plaintiff cannot establish that he meets the eligibility requirements for coverage under defendant's retiree group health insurance plan and cannot establish any other basis for obtaining such coverage.

■ The parties do not dispute that eligibility for retiree medical benefits requires retirement from active service. Moreover, the parties do not contest that an employee could retire from defendant at age sixty

---

4. Defendant first argues that plaintiff lacks standing to recover retiree medical benefits under ERISA because plaintiff is not a "participant" in the retirement health insurance plan. In support of its contention, defendant relies upon the Supreme Court decision in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

In *Bruch*, the Court interpreted the term "participant" to refer to " 'employees in, or reasonably expected to be in, currently covered employment,' or former employees who 'have a reasonable expectation of returning to covered employment' or 'a colorable claim' to vested benefits." 489 U.S. at 117, 109 S.Ct. at 958 (*quoting Saladino v. I.L.G.W.U. National Retirement Fund*, 754 F.2d 473, 476 (2d Cir.1985) and

*Kuntz v. Reese*, 785 F.2d 1410, 1411 (9th Cir.) (*per curiam*), *cert. denied*, 479 U.S. 916, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986). To determine whether a claimant may be considered a "participant" of an employee benefit plan under the test set forth in *Bruch*, a court necessarily must examine the merits of the case. Therefore, to decide whether plaintiff has standing to pursue a claim for benefits under ERISA, the Court must explore the merits of the parties' assertions.

5. Subsection 1144(b) provides that "[t]his section shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975." 29 *U.S.C.* § 1144(b).

with ten years of service (early retirement), at age sixty-five (normal retirement), or after age sixty-five (deferred retirement). Henry Deposition Exhibit 7.

Here, plaintiff terminated his employment with defendant in 1975 at age 46. Plaintiff does not meet the eligibility requirement of retirement from active service; therefore, plaintiff is not entitled to retiree medical benefits under the express terms of the health insurance plan.

### 3. The Contract Claims

Plaintiff claims that he was promised implicitly retiree medical insurance benefits as part of his employment contract with defendant USM.[6]

■ The employment contract between plaintiff and USM provides that plaintiff was to receive benefits "equal to or more favorable than" those previously supplied by defendant RSA. There is no evidence, however, that under the terms of the RSA benefit plan, one who left the employ of the company before drawing his pension could become eligible for retiree medical benefits upon reaching retirement age. To the contrary, plaintiff has testified that it was his understanding that if he terminated his employment with RSA before retirement, he "would get a proportionate share, whatever [his] share was, of the assets of that corporation.... If [he] stayed to retirement, [he would] get the retirement." Henry Deposition at 23–24.

Thus, neither the written employment contract nor plaintiff's testimony offers any evidence to establish that plaintiff was entitled to retiree medical benefits regardless of his status upon terminating his employment with RSA. Therefore, plaintiff is not entitled to such benefits pursuant to the contractual clause providing that plaintiff was to receive benefits equal to those awarded by RSA. Moreover, no evidence

has been presented to the Court suggesting that RSA's successor provided retiree medical benefits to former employees receiving vested pension benefits regardless of their status upon leaving defendant's employ. Plaintiff, therefore, cannot recover such benefits by relying on the "more favorable than" provision of the contractual clause.

■ Plaintiff also maintains that it was his understanding that he and Sherman would be treated equally by USM. Plaintiff claims that he arrived at this belief because the employment contracts between plaintiff and USM and Sherman and USM essentially were identical. Plaintiff also claims that he believed that he and Sherman would be treated equally based upon discussions between plaintiff and Mr. Sampson, USM's Industrial Relations Director. Henry Deposition at 24–25.

First, the employment contracts with USM do not provide retiree medical benefits for an employee who terminates his employment with defendant prior to becoming eligible for retirement. That both plaintiff and Sherman had essentially identical employment contracts with USM is of no consequence.

■ Second, plaintiff's oral agreement with Mr. Sampson that plaintiff and Sherman would be treated equally was never memorialized in writing. The law of contracts is well settled that a party to a contract cannot rely on extrinsic parol evidence to circumvent the clear and unambiguous terms of that contract. *Atwood v. City of Boston*, 310 Mass. 70, 37 N.E.2d 131 (1941); *Goldband v. Commissioner of Banks*, 245 Mass. 143, 139 N.E. 834 (1923). The agreement between plaintiff and defendant USM is clear:

7. This Agreement sets forth the entire understanding between the parties with reference to the subject matter hereof

---

**6.** The employment contract between plaintiff and defendant USM provides, in pertinent part:
3. As full consideration for all full time, active service rendered and assignments herein provided to be made by Employee during his employment hereunder, ... Employee may participate in the group hospitalization, profit sharing and pension plans established by [the

company] for its Red Sherman Division on a basis equal to or more favorable than now being provided for Employee by Red Sherman Associates, Inc. ... Employee shall participate in no other plans or benefits of [the company].
Henry Deposition Exhibit 1.

and may not be modified or terminated and no requirement of or breach of this Agreement can be waived orally or otherwise than by a writing signed by Employee and by [the company] acting by its President or Assistant Vice–President.

Henry Deposition Exhibit 1. Therefore, plaintiff cannot rely on his oral discussions with Mr. Sampson to contradict the terms of his agreement with USM.

Based upon the language of the written agreement entered into by plaintiff and USM, plaintiff is not entitled to receive retiree medical benefits.

### 4. The Estoppel Claim

Plaintiff claims that as a result of his belief that retiree medical benefits would be provided to him by defendant as part of his retirement package, he did not obtain retiree medical coverage for himself. Plaintiff further claims that because he was aware that Sherman received retiree medical benefits after retiring, plaintiff had no reason to doubt that he, too, would receive retiree medical benefits upon reaching age sixty. Plaintiff asserts that, therefore, defendant is equitably estopped from denying to plaintiff medical insurance benefits.

The conduct upon which plaintiff relies in support of his estoppel claim is the receipt of retiree medical benefits by Sherman. Sherman began receiving such benefits in September, 1979. Because the act of receiving the benefits occurred after January 1, 1975, the provisions of ERISA apply. See 29 U.S.C. § 1144(a), (b); Jameson, 765 F.2d at 51. Therefore, in ruling on the merits of plaintiff's estoppel claim, the Court must look to the substantive provisions of ERISA.

■ Under Third Circuit precedents, a claim of equitable estoppel is not available in ERISA cases absent "extraordinary circumstances." Gridley v. Cleveland Pneumatic Co., 924 F.2d 1310, 1319 (3d Cir.),

cert. denied, —— U.S. ——, 111 S.Ct. 2856, 115 L.Ed.2d 1023 (1991); see Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155 (3d Cir.1990).

In Hozier, the Third Circuit noted that an employer's post-formation promise to increase benefits, whether explicit and oral or implicit through custom, cannot alter the scope of entitlements created by a plan that must, under governing law, be established and maintained pursuant to a written instrument under section 402(a)(1) of ERISA.[7] Hozier, 908 F.2d at 1165 n. 10. The Hozier court further noted that the most that the plaintiffs could allege was that defendants' practice of paying benefits to certain employees after the consolidation had been completed constituted an implied representation to all other employees that such benefits would continue to be provided, notwithstanding the scope of the original plan. 908 F.2d at 1165 n. 10. The court concluded that under those circumstances, a claim of estoppel could not be reconciled with section 402(a)(1) of ERISA. Id. The Hozier court cautioned, however, that estoppel may be available in ERISA cases involving extraordinary circumstances. Id.; see Gridley v. Cleveland Pneumatic Co., 924 F.2d 1310 (3d Cir.1991) (holding that the distribution of an inaccurate summary plan description cannot provide a basis for equitable estoppel absent extraordinary circumstances); see also Labus, 740 F.Supp. at 1065 (where plaintiff's claim of estoppel, which was deemed preempted by ERISA, was dismissed for failing to set forth facts by which defendants could be liable to plaintiff under ERISA).

In Rosen v. Hotel & Restaurant Employees & Bartenders Union, 637 F.2d 592 (3d Cir.), cert. denied, 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981), the court concluded that the case before it involved "extraordinary circumstances." In that case, defendant, trustee of the pension fund, advised plaintiff employee that plain-

---

**7.** Section 402(a)(1) of ERISA requires that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). Relying on this provision, the Third Circuit held that ERISA precludes oral amendments to employee benefit plans. See Hozier, 908 F.2d at 1163.

tiff's pension was in jeopardy due to his employer's failure to contribute to the fund. Plaintiff then made out a check for the total amount of his employer's arrearages, and the trustee deposited the money into the pension fund's account. The court concluded that the trustee's acceptance of the check on behalf of the fund estopped defendants from asserting that the plaintiff's payment of arrearages did not entitle him to credited service under the plan. *Id.* at 597.

In arriving at its decision, the *Rosen* court reasoned that plaintiff was justified in believing that his payment had brought his pension up to date and that plaintiff's detrimental reliance on the trustees actions was reasonable under the circumstances. *Rosen,* 637 F.2d at 597. The court held that plaintiff's reliance was based on more than mere assurances made by the trustee and classified the case before it as one involving "extraordinary circumstances." *Id.* at 598.

 To prevail under the doctrine of equitable estoppel, a party must show a material representation, reasonable reliance upon that representation, and damage resulting from that representation. *Gridley,* 924 F.2d at 1319 (3d Cir.1991); *Pane v. RCA Corp.,* 868 F.2d 631, 638 (3d Cir.1989).

 In this case, plaintiff has testified that defendant never specifically told plaintiff that he would receive a benefit for which he was not eligible. Henry Deposition at 31–33. Moreover, plaintiff points to no specific representation made by defendant promising retiree medical insurance benefits in the event that he did not retire from active service. Plaintiff claims only that the receipt of retiree medical benefits by Sherman led plaintiff to believe that he, too, would receive retiree medical benefits. The Court finds that defendant made no misrepresentation that could have given rise to such a belief.

Even if the Court deems the granting of retiree medical benefits to Sherman a material representation by defendant, plaintiff's reliance on that act was not reasonable under the circumstances. In *Rosen,* the

court determined that the plaintiff's reliance was based on more than mere assurances made by the defendants. 637 F.2d at 598. In that case, the plaintiff was initially approached by the defendant trustee who discussed with plaintiff the threat to his pension by his employer's failure to contribute and gave the plaintiff a tabulation of the employer's arrearages upon which the plaintiff relied in reimbursing the pension fund for the amount of his employer's arrearages. *Id.* at 597.

Here, plaintiff concedes that defendant never specifically told plaintiff that he would receive retiree medical insurance benefits, regardless of his eligibility, when he began receiving his vested pension benefits. Moreover, although plaintiff inquired as to his eligibility for a vested pension in the event his employment terminated prior to his having vested in the plan, there is no suggestion from the facts of this case that plaintiff ever inquired as to whether he would be entitled to medical benefits under those same circumstances. In this case, plaintiff's detrimental reliance on defendant's acts clearly was unreasonable.

Plaintiff's claim fails to satisfy even the ordinary elements of the doctrine of equitable estoppel. The circumstances in this case, therefore, cannot rise to the level of extraordinary. Absent the existence of extraordinary circumstances, plaintiff's estoppel claim cannot survive.

The parties concede that there exists no genuine issue of material fact. Plaintiff is not entitled to retiree medical insurance benefits under the express terms of the health plan. Moreover, neither the written employment agreement between plaintiff and USM not plaintiff's testimony offers any evidence to establish that plaintiff was entitled to such benefits regardless of his eligibility, upon receiving his vested pension. Furthermore, because the Third Circuit has ruled that claims of estoppel are not available in ERISA actions absent extraordinary circumstances, plaintiff's estoppel claim cannot lie. Thus, defendant has demonstrated that it is entitled to judgment as a matter of law.

## CONCLUSION

For the reasons set forth above, the Court will grant defendant's motion for summary judgment and will deny plaintiff's cross-motion for summary judgment. An appropriate Order shall issue.